## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**TRAVIS LEE,**

     **Plaintiff,**

**vs.**                                                      **CASE NO.: 3:20-cv-00553-BJD-MCR**

**FLAGLER COUNTY SCHOOL
BOARD,**

     **Defendant.**

_____/

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### AND SUPPORTING MEMORANDUM OF LAW

COMES NOW, Defendant, FLAGLER COUNTY SCHOOL BOARD, by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby submits this Motion for Summary Judgment and Supporting Memorandum of Law, and in support states as follows:

### I.  INTRODUCTION

The Court should grant summary judgment in favor of Defendant as a matter of law because no reasonable jury could conclude that Plaintiff has established a prima facie case of race and national origin discrimination predicated on Defendant's decision not to promote Plaintiff, nor that Defendant's legitimate, nondiscriminatory reasoning for not selecting Plaintiff for promotion was instead pretext for discrimination.

Plaintiff's operative Second Amended Complaint alleges that Defendant did not promote him because of his race and national origin in violation of Title VII of the Civil Rights Act of 1964, and the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. § 760.01 et al. [Doc. 9]. Plaintiff, who is African American, alleges that a candidate outside his protected class who were less qualified was offered a position for which he applied, and that he was denied the opportunity to apply for a separate position.

Plaintiff can neither establish material facts which would raise a prima facie inference of discrimination, nor rebut Defendant's legitimate, nondiscriminatory reason for not promoting Plaintiff. Defendant uses an application selection process for hiring and promoting employees which involves an interview committee which includes employees from the same protected class as Plaintiff. In addition to hiring and promoting dozens of employees of varying races and ethnicities, Defendant has hired and promoted many employees from the same protected class as Plaintiff.

Even if Plaintiff could establish a prima facie case of discrimination, Plaintiff cannot establish that Defendant's legitimate nondiscriminatory reason for not selecting Plaintiff was pretextual. Plaintiff was not promoted because an unbiased hiring interview committee concluded that Plaintiff was not the best qualified candidate for the position for which he applied. Plaintiff's subjective belief that he had superior qualifications for the position does not provide sufficient grounds for a

reasonable factfinder to find Defendant's legitimate, nondiscriminatory reasons unworthy of credence.

In support of this Motion, refer to the Affidavit of Jewel Johnson, Defendant's Chief Human Resources Officer, attached hereto as Exhibit "A".

For these reasons, as set forth more fully herein, the Court should grant Defendant's Motion for Summary Judgment.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### *A.  Background Information*

Defendant is a non-profit public school district located in Flagler County with approximately 12,900 students, which employs approximately 1,700 full and part time employees. There are nine (9) schools in the Flagler County School District (2 high schools, 2 middle schools, and 5 elementary schools), and one (1) elementary charter school.

Defendant implements and abides by equal employment opportunity procedures for its personnel, including School Board Policy 606 titled Unlawful Discrimination Prohibited (a copy of which is attached hereto as Exhibit "B"), which states:

> No person shall, on the basis of race, color, religion, gender, age, marital status, sexual orientation, disability, political or religious beliefs, national or ethnic origin, or genetic information, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity, or in any employment conditions or practices.

The language of School Board Policy 606 is substantially similar to the language of § 1000.05(2)(a), Fla. Stat., which states:

> No person in this state shall, on the basis of race, ethnicity, national origin, gender, disability, religion, or marital status, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any public K-20 education program or activity, or in any employment conditions or practices, conducted by a public educational institution that receives or benefits from federal or state financial assistance.

Plaintiff is currently employed by Defendant as the principal of Rymfire Elementary School since the beginning of the 2021-2022 school year, the same position he complains of not receiving in this action. Plaintiff has continuously been employed by Defendant for over 18 years, since 2004.

Plaintiff's employment with Defendant began as dean of students at Flagler Palm Coast High School. In 2009, Defendant promoted Plaintiff to the position of assistant principal at Flagler Palm Coast High School. In 2015, Plaintiff transferred to assistant principal of Rymfire Elementary School. During the time that Plaintiff was employed as an assistant principal at Rymfire Elementary School, the principal at that school was a female of the same protected class as Plaintiff. In 2021, Defendant promoted Plaintiff to principal of Rymfire Elementary School.

The basis for this action is that Plaintiff previously applied for a single principal position in June of 2019 that would have constituted a promotion from his assistant principal position, but Defendant ultimately did not choose Plaintiff as the

best qualified candidate for that position. Plaintiff's allegation that he was denied an opportunity to interview for a November 2019 principal position is inaccurate and should be disregarded, as explained below.

### B.  Defendant's Application and Selection Process for Employment

Defendant fills its employment vacancies by a process that begins with posting and advertising an open position and receiving applications from all interested individuals, including both internal and external candidates. Defendant next interviews all qualified applicants through a hiring committee panel which is typically comprised of 3-7 employees ranging from teachers to principals to directors/officers. Some of the committee members are generally permanent (such as Jewel Johnson), while others are rotated based upon their relevance to the particular position offered. Once the interviews are completed, the District Superintendent hires the candidate recommended by the committee as the best qualified to fill the position.

### C.  Plaintiff's Application and Interview for the June 2019 Position

During the applicable time period at issue, Plaintiff applied for a single principal position in June 2019, at Flagler Palm Coast High School. [Doc. 9, para. 18]. (A copy of Plaintiff's underlying charge filed with the Equal Opportunity Employment Commission ("EEOC") which sets forth the applicable time period at

issue is attached hereto as Exhibit "C")[1]. Plaintiff had not ever before been employed as a principal at the time of this application. Defendant ultimately did not select Plaintiff as the best qualified candidate for this position, out of the ten individuals with completed applications for the position.

Instead, Defendant selected candidate James T. Russell, who is not of the same protected class as Plaintiff, as the best qualified candidate and hired him for the subject principal position. Unlike Plaintiff, Mr. Russell had previous employment experience as a principal of a middle school in Volusia County for three years (2004-2007) and as a principal of a high school in Volusia County for four years (2008-2011). Further, Mr. Russell had most recently been employed as the Superintendent of Volusia County Schools for four years (2015-2019). (A copy of Mr. Russell's resume submitted as part of his application for this position is attached hereto as Exhibit "D"). It is notable that Volusia County has nearly five times the population as Flagler County.[2] Given Mr. Russell's substantially superior experience

---

[1] The Second Amended Complaint intentionally ignores the applicable 300-day time limit for filing a charge with the EEOC in an attempt to mislead the Court by referencing applications for positions made by Plaintiff in July of 2018, which is outside the proscribed EEOC time period and therefore cannot be considered by the Court. [Doc. 9, para. 30]. *See https://www.eeoc.gov/timelimits-filing-charge*.

[2] Per U.S. Census data, Volusia County has an estimated population of 564,412 as of July 1, 2021, and Flagler County has an estimated population of 120,932 as of July 1, 2021. *See www.census.gov*.

as to the subject position, no reasonable jury could conclude that Defendant's decision not to promote Plaintiff was due to racially discriminatory motives.

### D.  The November 2019 Position was Filled on an Interim Basis and Never Posted

Plaintiff alleges that "on or about November of 2019, [he] was denied an opportunity to interview for a promotional principal position at Belle Terre Elementary…" [Doc. 9, para. 19]. This statement is inaccurate and reasonably appears to be an attempt to intentionally mislead this Court based upon the facts that Plaintiff knows or should know. Said position was never posted by Defendant or open to applications whatsoever, because it was an unanticipated mid-school year vacancy for which the superintendent of Flagler County Schools determined it was in the best interests of the staff and students to appoint the then-assistant principal, Jessica DeFord, as interim principal. This decision was made for the advantages of continuity and familiarity between Ms. DeFord and the school, staff, and students. Plaintiff therefore cannot possibly show that he was "denied an opportunity" to interview for this position due to racially discriminatory motives (or for any other reason).

### III.  MEMORANDUM OF LAW

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate if it is evident through pleadings, depositions, admissions, and affidavits that there is "no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *McCullum v. Orlando*

*Regional Healthcare System, Inc.,* 768 F.3d 1135, 1141 (11th Cir. 2014); *Palermo*

*v. Grunau Company, Inc.,* 220 F. Supp. 3d 1300, 1305 (M.D. Fla. 2016).

In *Palermo*, the Court outlined how grounds for summary judgment may be

established:

> As to issues for which the movant would bear the burden of proof at trial, the movant must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of its case.
>
> As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the nonmoving party's case; or (2) the movant may provide affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant. However, [a] court need not permit a case to go to a jury...when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'

*Id.* at 1305 (quotations and citations omitted).

## B.  *Plaintiff Cannot Establish That He Was Not Promoted Because of His Race and/or National Origin in Violation of Title VII or the FCRA.*

### 1.  Legal Framework of Plaintiff's Claims

The Second Amended Complaint alleges two counts of racial discrimination against Defendant: a count for violation of Title VII, and a count for violation of the FCRA.

Title VII provides that it is "an unlawful employment practice for an employer to… refuse to hire… any individual, or otherwise discriminate against any individual… because of such individual's race… or national origin." 42 U.S.C. § 2000e-2(a)(1). The FCRA is modeled after Title VII and also prohibits employers from refusing to hire any individual based on such individual's race or national origin. Fla. Stat. § 760.10 (2018); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998). Title VII and the FCRA have the same elements and follow the same analytical framework. *Id.* at 1387; *Standard v. A.B.E.L. Servs.,* 161 F.3d 1318, 1330 (11th Cir. 1998).

To establish a prima facie case of race or national origin discrimination, the plaintiff must present either direct or circumstantial evidence. *EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1286 (11th Cir. 2000).

If there is no direct evidence of discrimination, the plaintiff must prove his case using circumstantial evidence under the *McDonnell Douglas* burden-shifting

framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-4 (1973); *Springer v. Convergys Customer Mgmt.,* 509 F.3d 1344, 1347 (11th Cir. 2007).

If the plaintiff establishes a prima facie case, the defendant's articulation of a legitimate, nondiscriminatory reason is sufficient to rebut the presumption of discrimination raised by the plaintiff's prima facie case. *Id.* The burden of production then shifts back to the plaintiff to prove that the employer's alleged reason was pretext for unlawful discrimination. *Id.*

## 2. No Direct Evidence of Discrimination

Here, Plaintiff has not even attempted to allege any direct evidence of discrimination. "Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990) (quoting *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989). "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of a [protected characteristic] constitute direct evidence of discrimination." *Id*. In *Earley*, the Eleventh Circuit observed that direct evidence of discrimination would be a memorandum saying, "Fire Earley, he is too old," while evidence that "suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence" is circumstantial. *Id*. at 1081-82.

Here, Plaintiff has not presented any evidence of discrimination whatsoever – he makes only the conclusory statement that Defendant filled the subject position with an individual outside Plaintiff's protected class. He presents no evidence so blatant that its intent could be nothing other than to discriminate. There is no direct evidence of discrimination in the record.

### 3.  Plaintiff Cannot Establish a Prima Facie Case of Discrimination

Plaintiff must therefore rely on circumstantial evidence to establish the following elements of his prima facie case of discrimination based on failure to hire: (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) he was rejected; and (4) Defendant filled the position with a person outside Plaintiff's protected class. *Childress v. Caterpillar Logistics Services, Inc.,* 369 Fed. Appx. 95, 96 (11th Cir. 2010). Defendant is entitled to summary judgment as a matter of law because no reasonable jury could find for the Plaintiff on the fourth element of his prima facie case.

Here, Defendant concedes that the first, second, and third elements have been satisfied; Plaintiff is a member of a protected class, he applied for and was qualified for the subject position, and he was not selected to fill the subject position.

However, Plaintiff cannot establish the fourth element because although he was not offered to fill the subject position, Defendant has hired and promoted many other applicants of the same protected class to fill similar and also more prestigious

positions; this includes Plaintiff himself in his current employment position as principal of Rymfire Elementary School, having replaced the former principal Lashakia Moore, who is of the same protected class, when Defendant promoted Ms. Moore to her current position of Director of Teaching and Learning. The following current administrative/leadership employees of Defendant are all of the same protected class as Plaintiff:

1. Lashakia Moore, Director of Teaching and Learning (2021-present), Former Principal of Rymfire Elementary School (2018-2021)

2. Dontarrious Rowls, Director of Transportation

3. Marquez Johnson, Director of Student Services

4. Jewel Johnson, Chief Human Resources Officer

5. Travis Lee, Principal, Rymfire Elementary School

6. Toussaint Roberson, Assistant Principal, Buddy Taylor Middle School

7. Fred Terry, Assistant Principal, Wadsworth Elementary School

8. Priscilla Campbell, Dean, Belle Terre Elementary School

Flagler County School District employs approximately 1,700 individuals and conducts hiring on an ongoing basis. The Court should view Defendant's hiring decisions collectively. Where an employer hires multiple individuals for the same position, "summary judgment is warranted when at least some of the candidates hired were in plaintiff's same protected class or classes." *Kennebrew v. Cobb County*

*School District,* Case No. 1:15-cv-02495-RWS-CMS, 2017 WL 4334244 (N.D. Ga. May 22, 2017. In *Kennebrew,* the plaintiff, who was an African American female, applied for a special needs education position. There were five vacancies – two were filled by Caucasian females, and three were filled by African American females. The defendant argued that the court should view its hiring decisions collectively, citing to cases from several district courts which granted summary judgment in failure to hire cases where some of the candidates hired were in plaintiff's same protected class.[3] The *Kennebrew* court found the caselaw cited by the defendant persuasive and concluded that the plaintiff failed to establish the fourth element on her prima facie case.

This court should follow suit because no reasonable jury could find that Defendant would continuously employ Plaintiff for 18+ years (since 2004), promote him to more prestigious positions twice (in 2009 and in 2021), employ those

---

[3] *Jenkins v. Foot Locker, Inc.,* No. 12-13175, 2014 WL 1977040, at *3 (E.D. Mich. May 15, 2014) (granting summary judgment to employer where twenty-seven of the twenty-eight hires were in the same protected class as the plaintiff, and declining to conduct a separate analysis for each of the twenty-eight positions); *Lochard v. Provena Saint Joseph Med. Ctr.,* 367 F. Supp. 2d 1214, 1223 (N.D. Ill. 2005) (holding that the plaintiff, who was African American, could not establish a prima facie case in a failure-to-hire case when one of the three vacancies was filled by an African American applicant); *McCloud v. Potter,* 506 F. Supp. 2d 1031, 1047 (S.D. Ala. 2007) (concluding that African American female employee had failed to establish that she was similarly situated to all comparator employees because the employee's list of persons that she contended were more favorably treated included persons in her same protected classes); *Bilal v. BP America Inc.,* No. 03-CV-9253, 2006 WL 83445, at *6 (N.D. Ill. Jan. 10, 2006) (concluding that the plaintiff could not establish a prima facie case of race discrimination in the termination context because the plaintiff, who was African American, was terminated along with two white employees by the same decision-maker as part of the same decision-making process)).

aforementioned individuals of the same protected class in similar or more prestigious positions than Plaintiff applied for, but then reject Plaintiff's application for the subject position because of that same protected class status.

Plaintiff cannot simply rely on the fact that Defendant hired an individual of a different race to establish a prima facie case, because Defendant was and is always hiring. Defendant has interviewed hundreds of candidates and hired dozens in the subject time period. Some of those hired were bound to be white, African American, and Hispanic, and the fact that individuals of these races were hired has no probative value with respect to the fourth element of Plaintiff's prima facie case. Thus, Plaintiff is unable to establish a prima facie case of racial discrimination.

<u>4.  Defendant's Legitimate Non-Discriminatory Reason</u>

Defendant's burden to produce a legitimate, nondiscriminatory reason for its decision not to hire Plaintiff is "exceedingly light." *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997). "Courts are not in the business of adjudging whether employment decisions are prudent or fair [but] [i]nstead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision". *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000). Defendant therefore "need not persuade the court that it was actually motivated by the proffered reasons… [it] need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated

by discriminatory animus." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (*quoting Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254-57 (1981)).

Plaintiff was not selected for the subject position in June 2019 because he was determined to not be the best qualified individual amongst the candidates. Although Defendant has continuously employed Plaintiff since 2004 in administrative positions,  whether Plaintiff sufficiently possessed the skills needed to adequately perform the more prestigious subject position is not a static minimal threshold which would warrant his selection for the position; the relevant determination instead is whether, after the application and interview process for every qualified candidate has finished, Defendant's hiring committee concluded that Plaintiff possessed the skills and all other relevant criteria to a greater total degree than all other candidates such that he was best qualified for the position. For the subject position, Defendant duly determined that Plaintiff was not the best qualified.

Defendant instead determined that candidate James T. Russell was the best qualified candidate and hired him for the subject principal position. The difference in qualifications between Plaintiff and Mr. Russell is enormous: at the time the subject position was open, Plaintiff had not ever been previously employed as a principal. In contrast, Mr. Russell had seven years prior experience employed as a

principal and also had four years prior experience employed in the more prestigious position of the superintendent of Volusia County Schools.

Beyond this stark difference in employment experience, subjective evaluations play an important and legitimate part in an employer's evaluation of potential employees. *See Mira v. Monroe County School Bd.,* 687 F.Supp. 1538, 1550-51 (S.D. Fla. 1988) (citing numerous cases in which an employer's employment action was lawfully motivated by subjective evaluation of an employee or applicant's personality and judgment). Courts have found that poor performance during an interview satisfies an employer's burden to produce a legitimate, non-discriminatory reason for rejecting an applicant. *Chapman v. AI Transport,* 229 F.3d 1012, 1028 (11th Cir. 2000); *Samedi v. Miami-Dade County,* 134 F.Supp.2d 1320, 1346 (S.D. Fla. 2001). As an example, poor scores on the interpersonal skills component of an interview are sufficient to establish a legitimate, nondiscriminatory reason for rejection of an applicant. *Samedi,* 134 F.Supp.2d at 1346; see also *McCarthney v. Griffin-Spalding County Bd. of Ed.,* 791 F.2d 1549, 1550 (11th Cir. 1986) (affirming district court's finding that superintendent's belief that plaintiff lacked necessary interpersonal skills overcame presumption of discriminatory motive).

"It is not the role of federal courts to second-guess the hiring decisions of business entities." *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1269 (11th Cir. 1999)

(citing *Nix v. WLCY Radio/Rahall Comms.,* 738 F.2d 1181, 1187 (11th Cir. 1984)). Defendant's advancement of a nondiscriminatory explanation of its action is sufficient to satisfy its burden of production. *Id*.

### 5.  Plaintiff Cannot Establish Pretext

Ultimately, regardless of whether Plaintiff can establish a prima facie case of race or national origin discrimination, summary judgment is nonetheless warranted because no reasonable jury could find that Defendant's legitimate, nondiscriminatory reason for maintaining Plaintiff's current employment for 18+ years and twice promoting him, yet determining he was not the best qualified candidate for the subject position in June 2019, was pretext for discrimination. Plaintiff has the burden to establish that the reason proffered by Defendant is pretextual. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001). To meet this burden, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 771 (11th Cir. 2005).

Here, Plaintiff has not attempted to present any evidence of pretext at all, as he relies solely on the conclusory statement that Defendant filled the subject position with an individual outside Plaintiff's protected class in support of his allegations of

racial discrimination. Plaintiff cannot point to any comments, notes, statements, policies, or practices of Defendant that could possibly infer a racially discriminatory motive, because none exist. If any such inferential material did exist, then Plaintiff reasonably would have encountered and been aware of it given he has been and remains an employee of Defendant and would surely have alleged such evidence in this suit.

At most, the allegations by Plaintiff which Defendant concedes are accurate is that he was sufficiently qualified to be considered for the subject position. This only means that Plaintiff met the minimum threshold for consideration for the subject position, as did every other applicant who was interviewed by the hiring committee. Although it is possible to show pretext by arguing one's qualifications, it can only be successful if "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir. 2004) (quotations and citation omitted, cert. denied, 546 U.S. 960 (2005). "[A] plaintiff… may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." *Pennington,* 261 F.3d at 1267.

Plaintiff has made other allegations that are illogical and without any basis in fact regarding this matter, including that Defendant "has engaged in an unlawful pattern and practice of … unlawful cronyism promotions" and has "selected Caucasian candidates for promotion who were either unqualified or had no administrative experience". [Doc. 9, para. 31]. Such "cronyism" was not a factor in the hiring of Mr. Russell over Plaintiff for the subject position, given that Mr. Russell had never before been employed by Defendant, but Plaintiff had been continuously employed by Defendant for 18+ years. Further, it is farcical to claim that Mr. Russell's seven years prior experience as a principal and four years prior experience as the superintendent of Volusia County Schools could possibly constitute being unqualified or lacking administrative experience, particularly against Plaintiff having had zero prior experience as a principal at the time the subject position was offered.

The forgoing allegations are simply Plaintiff attempting, unsuccessfully, to manufacture reasons to support his subjective belief that he did not receive the subject position because of his race, rather than Defendant's actual legitimate and nondiscriminatory decision-making based upon the measurement of Plaintiff's merit against the other qualified candidates. "Subjective belief, however genuine, does not constitute evidence of pretext or provide a basis for judicial relief." *Durham v.*

*Bryant Nursing Center,* 1987 WL 16434 (M.D. Ga. 1987) (*citing Ramsey v. Leath,*
706 F.2d 1166 (11th Cir. 1983).

Even when viewed in the light most favorable to Plaintiff, no reasonable jury
could find that pretext has been sufficiently established by Plaintiff. "Pretext means
more than a mistake on the part of the employer, pretext 'means a lie, specifically a
phony reason for some action'." *Chapman* at 1050 (quoting *Wolf v. Buss (America)
Inc.,* 77 F.3d 914, 920 (7th Cir. 1996)). Here, there is no evidence in the record
supporting Plaintiff's burden to prove that Defendant's reasons for not selecting him
were false, or that discrimination was the real reason Plaintiff was not selected.

This lack of evidence is reinforced by the fact that as to the open and posted
principal position at Rymfire Elementary School in 2021, Defendant used the exact
same application and interview process, ultimately concluded that Plaintiff was the
best qualified candidate, and duly promoted him to that position.

6.  The November 2019 Position Was Never an Open Position for Applications

It must be reiterated that there is no merit to Plaintiff's allegation that "on or
about November of 2019, [he] was denied an opportunity to interview for a
promotional principal position at Belle Terre Elementary…" [Doc. 9, para. 19].
Nobody was interviewed for said position because it was never open for applications
in the first place; rather, because the principal at that time had retired from the
position mid-school year, the superintendent of Flagler County Schools determined

it was in the best interests of the staff and students to appoint the then-assistant principal, Jessica DeFord, as interim principal. This decision was made for the advantages of continuity and familiarity between Ms. DeFord and the school, staff, and students.

Having engaged in Defendant's hiring/promoting process numerous times during his 18+ years of continuous employment, Plaintiff is well familiar with Defendant's system of posting open positions, receiving applications, and conducting interviews to determine the best qualified candidate. As such, Plaintiff has actual knowledge that this November 2019 position vacancy was not ever open to prospective candidate applications whatsoever. Plaintiff therefore cannot possibly show that he was "denied an opportunity" to interview for this position due to racially discriminatory motives, because there were no open interview opportunities for anybody at all. Said allegations are an intentional attempt to fabricate evidence against Defendant when there simply is none.

## IV.  CONCLUSION

WHEREFORE, Defendant, FLAGLER COUNTY SCHOOL BOARD, respectfully submits that the Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's action in its entirety.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of April, 2022, a true and correct copy of the foregoing, Defendant's Motion for Summary Judgment and Supporting Memorandum of Law, was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of filing via electronic mail to: Blair Jackson, Esq., Law Office of Corey I. Cohen & Associates, 21 Park Lake Street, Orlando, FL 32803, blair@coreycohen.com.

*s/ Dylan J. Hall, Esq.*
RICHARD BURTON BUSH, ESQ.
Florida Bar No. 294152
DYLAN J. HALL, ESQ.
Florida Bar No. 112528
BUSH & AUGSPURGER, P.A.
411 E. Jackson Street
Orlando, FL  32801
(407) 422-5319
(407) 849-1821 – FAX
rbb@bushlawgroup.com
djh@bushlawgroup.com
mkp@bushlawgroup.com
slo@bushlawgroup.com
Attorneys for Defendant

*Exhibit "A"*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**TRAVIS LEE,**

      **Plaintiff,**

**vs.**                        **CASE NO.: 3:20-cv-00553-BJD-MCR**

**FLAGLER COUNTY SCHOOL**
**BOARD,**

      **Defendant.**

_____/

**AFFIDAVIT IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND**
**SUPPORTING MEMORANDUM OF LAW**

1.    My name is Jewel Johnson. I am employed as the Chief Human Resources Officer since September 2019 for the Flagler County School Board, Defendant in this lawsuit.

2.    I am over the age of eighteen (18) and have personal knowledge of the facts alleged herein.

3.    I am an African American female.

4.    A responsibility of my employment is that I am a member of the School Board's hiring interview committee panel, which is typically comprised of 3-7 employees ranging from teachers to principals to executive directors.

5.      The School Board fills its employment vacancies by a process that begins with posting and advertising an open position and receiving applications from all interested individuals, including both internal and external candidates. Defendant next interviews all qualified applicants by a hiring interview committee panel. Once the interviews are completed, the District Superintendent hires the candidate recommended by the committee as the best qualified to fill the position.

6.      The School Board implements and abides by equal employment opportunity procedures for its personnel, including School Board Policy 606 titled Unlawful Discrimination Prohibited, and including as to the June 2019 principal position at Flagler Palm Coast High School applied for by Plaintiff, TRAVIS LEE, which states:

> No person shall, on the basis of race, color, religion, gender, age, marital status, sexual orientation, disability, political or religious beliefs, national or ethnic origin, or genetic information, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity, or in any employment conditions or practices.

7.      As to the open principal position at Flagler Palm Coast High School in June 2019, after completion of the entire application and interview processes the hiring committee determined that Mr. Lee was not the best qualified candidate out of all the applicants. Instead, the School Board determined that James T. Russell, a former principal and the former superintendent of Volusia County Schools, was the best qualified candidate and hired him for the subject position.

2

8.     In November 2019, the principal at Belle Terre Elementary retired mid-school year and the superintendent of Flagler County Schools determined it was in the best interests of the staff and students to appoint the then-assistant principal, Jessica DeFord, as interim principal. This decision was made for the advantages of continuity and familiarity between Ms. DeFord and the school, staff, and students. Said vacated principal position was never posted by the School Board or open for applications or interviews by prospective candidates in November 2019.

9.     As to the open principal position at Rymfire Elementary School in 2021, I was a member of the hiring committee panel. After completion of the entire application and interview processes the hiring committee determined that Mr. Lee was the best qualified candidate out of all applicants and hired him for the subject position. Mr. Lee continues to be employed as principal of Rymfire Elementary School as of the date of this Affidavit.

10.     The School Board and the superintendent did not base any of their hiring decisions on the race or national origin of any of the applicants, including Mr. Lee.

11.     The School Board and the superintendent do not have or use any discriminatory motives in making employment decisions, including as to the race and national origin of applicants, including Mr. Lee.

12.     The School Board has hired and currently employs the following

3

individuals of the same protected class as Mr. Lee in similar or more prestigious positions than the subject position that he applied for, including Mr. Lee himself in the position of principal of Rymfire Elementary School since 2021:

a.  Lashakia Moore, Director of Teaching and Learning

b.  Dontarrious Rowls, Director of Transportation

c.  Marquez Johnson, Director of Student Services

d.  Jewel Johnson, Chief Human Resources Officer

e.  Travis Lee, Principal, Rymfire Elementary School

f.  Toussaint Roberson, Assistant Principal, Buddy Taylor Middle School

g.  Fred Terry, Assistant Principal, Wadsworth Elementary School

h.  Priscilla Campbell, Dean, Belle Terre Elementary School

13.   FURTHER AFFIANT SAYETH NAUGHT.

*[THIS SPACE INTENTIONALLY BLANK]*

Dated: ___4/28/22___         By: _____

JEWEL JOHNSON, AFFIANT,

Chief Human Resources Officer,

Flagler County School Board

STATE OF FLORIDA              )
COUNTY OF ___Flagler___       )

BEFORE ME, the undersigned authority, personally appeared JEWEL JOHNSON, in their aforesaid capacity, who is { ✔ } personally known to me or who { } produced _____ as identification, and who said that the information contained in the foregoing Affidavit in Support of Defendant's Motion for Summary Judgment and Supporting Memorandum of Law is true to the best of their knowledge and belief.

SWORN TO (or AFFIRMED) and SUBSCRIBED before me in the County and State aforesaid on this _27th_ day of ___April___, 2022.

_____

NOTARY PUBLIC, STATE OF FLORIDA

My Commission Expires: 11|13|2023

KIM A. HUNT
MY COMMISSION # GG 931876
EXPIRES: November 13, 2023
Bonded Thru Notary Public Underwriters

5

*Exhibit "B"*



Engage. Educate. Empower.

| | |
|---|---|
| Book | School Board Policy Manual |
| Section | Chapter 6: HUMAN RESOURCES |
| Title | Unlawful Discrimination Prohibited |
| Code | 606 |
| Status | Active |
| Legal | STATUTORY AUTHORITY 1001.41 1012.22 1012.23, F.S. |
| | LAWS IMPLEMENTED 1000.05 1012.22, F.S. |
| Adopted | September 15, 1998 |
| Last Revised | July 23, 2013 |

1. No person shall, on the basis of race, color, religion, sex, gender, age, marital status, sexual orientation, disability, political or religious beliefs, national or ethic origin, or genetic information, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity, or in any employment conditions or practices.
2. The School Board shall comply with the Americans with Disabilities Act of 1990 (ADA). This law makes it unlawful to discriminate against a qualified individual with a disability who can perform the essential functions of his/her job with reasonable accommodations.

*Exhibit "C"*

RECEIVED

JAN 0 9 2020

EEOC-MIAMI DISTRICT OFFICE

DATED:  January 7, 2020

EEOC Charge No.:  510-2020-01808

## THE VERIFIED COMPLAINT OF TRAVIS LEE FOR RACIAL EMPLOYMENT DISCRIMINATION AGAINST THE FLAGLER SCHOOLS AND ITS GOVERNING SCHOOL BOARD MEMBERS

COMES NOW, the Verified Complaint and Charge of Discrimination by TRAVIS LEE, hereinafter ("LEE or Complainant"), by and through his representative Eric Josey, Public Service Premier Consulting, Inc., and files his charge for unlawful racial employment discrimination and unlawful adverse and disparate treatment against the Respondent FLAGLER SCHOOLS, hereinafter ("FLAGLER SCHOOLS or Respondent"), and its governing SCHOOL BOARD members, collectively and in their individual capacity, alleging that the Respondent arbitrarily and unlawfully engaged in pattern and practice of denying him PROMOTION, and other African-American employees, numerous consecutive times in terms and condition of employment, specifically because of our race and color.  In support thereof, LEE swears and affirms the following:

### I. INTRODUCTION

1. This is a prerequisite legal action for equitable relief against the Respondent to redress unlawful racial employment discrimination on the basis of LEE's African-American race and dark skin color, and for other similarly-situated African-American employees in his Title VII protected-class.

2. Further, this action is brought to seek redress of FLAGLER SCHOOLS' systemic pattern and practice of racial discrimination in employee promotions and related opportunities, to secure injunctive relief in protections of his Title VII rights and to redress his deprivation of rights secured pursuant to Title VII of the Civil Rights Act of 1964, as amended.  The jurisdiction of this

~ 1 ~

agency is invoked by the Complainant pursuant to 28 U.S.C. §§ 1331, 1343(4) and 28 U.S.C. §§ 2201 and 2202.

3.      This preliminary lawsuit action is brought pursuant to the "The Civil Rights Act of 1866," 42 U.S.C. § 1981, and 1981 and The Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991. Equitable and other relief is sought under 42 U.S.C. 2000e-5(g)., which provides for relief against unlawful discrimination in employment on the basis of race and color, and other injuries related thereto.

4.      Specifically, LEE alleges that FLAGLER SCHOOLS has subjected him, and other similarly-situated protected-class African-American educators, to adverse and disparate treatment in equable terms, conditions and benefits of employee promotion, specifically, in the loss of higher pay and earned prestigious positions in promotions based on his Black race and dark brown skin color.

5.      LEE seeks, *inter alia*, a permanent injunction and other equitable relief necessary to eliminate the effects of FLAGLER SCHOOLS, past and present, racial discrimination in promotions and to prevent such continuing discrimination which adversely affected the lives and careers of FLAGLER SCHOOLS' Black public servants.  LEE seeks a permanent restructuring of FLAGLER SCHOOLS' promotion process in the interviews, selections and posting of promotion positions to be conducted in full compliance with the State's Affirmative Action Law pursuant to § F.S. 110.112 and in violation of F.S. § 1000.05 Sub. 2(a).

6.      LEE seeks compensatory damages, punitive damages, back-pay, front pay and other equitable remedies necessary to make himself whole.  If the Respondent fails to settle this matter in this administrative venue, LEE shall request EEOC to file this case in the District Court of jurisdiction for a trial by jury on all issues pursuant to 42 U.S.C § 1981a.  Further, LEE shall seek

attorneys' fees and costs pursuant to 42 U.S.C. § 1988, if he is compelled to file this case on his own in the District Court of Jurisdiction.

## II.  JURISDICTION AND VENUE

7.      The unlawful employment practices alleged herein were committed by the Respondent within Flagler County, Florida.  This venue is proper pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5.  Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4), and 42 U.S.C. § 2000e-5; and 42 U.S.C. §§ 12112, 12117(a) and 12203, which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3), Section 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a and the "Civil Rights Act of 1866," as amended by § 101 of the "Civil Rights Act of 1991," and codified at 42 U.S.C. § 1981.

## III.  ADMINISTRATIVE PREREQUISITES

8.      LEE pursues his claims against the Respondent under Title VII and 42 U.S.C. §1981, and now seeks to meet all administrative conditions for the filing of this case under Title VII in the competent court of jurisdiction.  LEE timely files his claims of discrimination to seek settlement in mediation, or in the alternative, for EEOC to file this case on his behalf if necessary, or otherwise obtain a Right-To-Sue Notice in order to file a lawsuit in the Middle District Court of Florida.

## IV.  PARTIES

9.      Complainant TRAVIS LEE, is an African-American male citizen of the United States, is over nineteen (19) years of age and is domicile in the State of Florida.

10.     Respondent FLAGLER SCHOOLS, and its governing SCHOOL BOARD, is a State entity under the Governor's Executive Branch, the Florida State Board of Education and Florida

Department of Education within the jurisdiction of this EEOC agency and the United States District Court, Middle District of Florida. FLAGLER SCHOOLS is an employer doing business in Flagler County, Florida, and at all times relevant to this action, the current employer of the Complainant within the meaning of 42 U.S.C. §1981 and of 42 U.S.C. § 2000e(a) and (b). At all times relevant to this action, FLAGLER SCHOOLS has employed at least Two-Hundred (200) employees or more.

## V. <u>STATUTE OF LIMITATIONS</u>

11.     Under Title VII, a claimant must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment action if the charge is covered by State or local anti-discrimination law as here in Florida. 42 U.S.C. § 2000e-5(e). This statutory requirement is analogous to a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). The timeliness of a discrimination claim is measured from the date the claimant "knows or reasonably should know that he or she has been discriminated against." *See, e.g., Sturniolo v. Sheaffer, Eaton, Inc.*, 15 F.3d 1023 (11th Cir.1994).

12.     In the present case, LEE filed his claim with the EEOC on **January 7, 2020**. Therefore, absent a continuing violation exception which LEE asserts in this cause, generally only those incidents which occurred on or after, or during the 300-day period, in this case **March 13, 2019**, prior to the filing of the EEOC charge are actionable under Title VII. Accordingly, the timely-asserted claims of LEE's discriminatory treatment are as follows: (1) that on **November 25, 2019**, LEE was unlawfully denied an opportunity to interview for a promotion position for which he is highly qualified, specifically because of his race and color. LEE avers that he was unlawfully denied the opportunity to interview for the Principal position at Belle Terre Elementary which was vacated by retired Principal Dr. Terence Culver. This action was contrary to this State's Affirmative Action Laws in Fla. Sta. § 110.112 and Fla. Sta. § 1000.05, Sub. 2(a).

~ 4 ~

13.     LEE alleges that because Superintendent James Tager extra-judicially, arbitrarily, discriminatorily and unlawfully selected Belle Terre Elementary AP Jessica Deford, a Caucasian female for the Principal position without posting the position or convening a formal committee for selection, (2) In **June of 2019**, LEE interviewed for the Flagler Palm Coast High School (FPCHS) Principal Position.  FLAGLER SCHOOLS discriminatorily and arbitrarily selected Tom Russell, a Caucasian male, who was recently fired from his position as the Superintendent at Volusia School at the time.  Additionally, LEE argues that FLAGLER SCHOOLS' selection and promotion of Tom Russell was contrary to this State's Affirmative Action Laws in Fla. Sta. § 110.112 and Fla. Sta. § 1000.05, Sub. 2(a).

## VI. **PRIMA FACIE REQUISITE**

14.     To make a prima facie case of disparate treatment discrimination, the courts apply the paradigm set forth in *McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973)*.  Accordingly, LEE declares that he: (1) belongs to a protected class of Black male; (2) was qualified for the available promotion positions; and (3) was subjected to an adverse employment action in being denied such promotions; and that (4) FLAGLER SCHOOLS gave better treatment to a similarly-situated Caucasian employees outside the plaintiff's protected class.  See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008); Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006); Farrell v. Butler Univ., 421 F.3d 609, 613 (7th Cir. 2005); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002); Geraci v. Moody-Tottrup Int'l, Inc., 82 F.3d 578, 580 (3d Cir. 1996).

## VII. **PRELIMINARY STATEMENT**

15.     LEE avers that FLAGLER SCHOOLS, by and through its SCHOOL BOARD, has engaged in a pattern and practice of racial discrimination, disparaging and adverse treatment of their Black employees as manifested by its practices of unlawfully denying African-American employees

~ 5 ~

higher pay rates in promotional opportunities, advanced leadership training, and other benefits in terms and conditions of employment as accorded to other non-protected employees.

16.     Specifically, FLAGLER SCHOOLS willfully, knowingly and intentionally deters and discourages African-American employees from seeking promotions and desirable job assignments; fails to select and/or train African-Americans for desirable job assignments for promotion; denies promotional pay rates increase for African- Americans and knowingly in failing to promulgate requisite Affirmative Action policies for interviewing, selecting and promoting employees pursuant to this State's Affirmative Action Laws in F.S. § 110.112 and F.S. § 1000.05, Sub. 2(a).

17.     This EEOC action in part seeks to enjoin the Respondent from continuing its specific illicit, subjective, arbitrary and discriminatory practice interviewing, selecting and promoting candidates for promotions without any written policy or guidelines, and surreptitious practice in selecting less qualified or unqualified employees for promotion without adherence to the existing posting and selection practice which has injured, and continue to injure, African-American employees in all aspects of employment advancement and opportunities.  FLAGLER SCHOOLS has created and maintained a status quo system-wide employment promotion practice of race-based adverse and disparate treatment, which specifically limited the employment opportunities of African-American employees in various aspects employment operations including, but not limited to, hiring, assignment selections, advanced leadership training, promotions and higher pay rates.

18.     Such illegal discriminatory promotion practices without a formal written policy are premised on an invidious and racially discriminatory animus directed against African-American employees and are specifically calculated to deny Title VII protected-class members of equal treatment and equitable employment opportunities guaranteed by the Civil Rights Act of 1866 codified under 42 U.S.C. §1981.  LEE points to the Civil Rights Act of 1866, quoted as follows:

~ 6 ~

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

## VIII.   STATEMENT OF BACKGROUND

19.      LEE is a highly accomplished Assistant Principal at Rymfire Elementary School of the FLAGLER SCHOOLS district.  His education, employment history, training, experience and discipline record are as follows:

- LEE is a veteran educator and has over 21 years of experience.

- LEE holds a Bachelor of Science Degree in Education-Physical, Education K-12 from Florida A&M University, and a Master of Science Degree in Educational Leadership from Nova Southeastern University.

- LEE holds the following certifications: Florida School Principal K thru 12 (2016), Educational Leadership K thru 12 (2009), Exceptional Student Education K thru 12 (2004), Physical Education K thru 12 (1999) and successfully completed the NEFEC Principal Leadership Academy (2016).

- In 1999 - 2000, LEE began his career with the MARION COUNTY SCHOOL DISTRICT as a Health Teacher, Assistant Football Coach and Wrestling Coach.

- In 2000 – 2001, was employed as Physical Education Teacher, JV Head Coach and Boys Track Coach at Lake Weir High School.

- In 2001 – 2002, was employed by the SEMINOLE COUNTY SCHOOL DISTRICT as a Physical Education Teacher and Varsity Assistant Football Coach.

- In 2002 – 2004, was employed by the MARION COUNTY SCHOOL DISTRICT as a Physical Education Teacher and Varsity Assistant Head Football Coach.

- In 2004 - 2009, LEE was employed by the FLAGLER COUNTY SCHOOL DISTRICT as a Dean of Students, BTMS PAL Head Football Coach, Girls Track Coach, Varsity Football Coach and JV Head Football Coach.

- In 2009, Lee appointed to the position of Assistant Principal in the FLAGLER PALM COAST HIGH SCHOOL;

- In 2015 to Present, LEE is currently the Assistant Principal at RYMFIRE ELEMENTARY School.

- LEE has never been the subject of any form of employment discipline or reprimand.

- LEE has received numerous commendations, recommendations and "highly effective" ratings on his employee performance evaluations, see attached.   FLAGLER SCHOOLS do not dispute the aforementioned facts.

- Throughout LEE's career, he has taken on leadership roles to transform the instructional culture in his school.

- LEE is an innovator and has numerous accomplishments.  He led a team at RES that created system of support for MTSS for our students and teachers impacting the whole school positively;

- He led the team that created and adopted the Rymfire High Support Intervention Model (HSIM) shift at RES that is being copied/modeled in other district schools (OKES and BES) and the model is touted as the recommended district model for providing a continuum of education for supporting students with disabilities (SWD) and other students that are struggling academically.

- In the 1st year of implementation of the HSIM, Rymfire Elementary School's letter grade increased by one letter grade and the learning gains data increased in all areas immediately following the school's implementation of the High Support Intervention Model (HSIM).

- During a school tour with Superintendent James Tager and other educators from around the State, Tager stated that, "LEE created this model and he also will be a Principal.

- During this 2020 School year, LEE created the ESSA Charts for tracking student subgroups data which is now recognized by the FLDOE Chancellor of School Improvement as a brilliant idea not being done anywhere else in the State.  It was touted by the superintendent and shared in the Flagler School District's Principal meeting as a way of tracking student subgroup data all over the district.

- The Executive Director over Community Engagement Lynette Shott, a Caucasian female, stated as a result of this praise, that LEE learned a lot from his first-year under Principal Moore.  It should be noted that LEE actually mentored Mrs. Moore in the past serving as her Directing Administrator on Moore's administrative internship upon her completing her schooling for educational leadership.

- When Mrs. Shott was the Principal at FPCHS, and when LEE was the Assistant Principal at the time, Mrs. Shott DENIED LEE's request to be in a more curriculum intense role in stating, "I can't afford for you to be out of the discipline office and you do the work of two people."

- It should be noted that Mrs. Shott intentionally stunted LEE's advancement in his position as an administrator on the curriculum side to the point LEE ultimately had to leave the school to gain that experience as an instructional leader. LEE believed that her intentional obstruction of LEE's advancement was because of his race and color;

- LEE went on to create a new "Model for Inclusion" to support former Option one students based on recent legislation for inclusion.  As a result of LEE's initiative and creation, students were passing classes based on this higher support model prior to LEE leaving FPCHS in 2015 for RES.  LEE's data was shared by FPCHS Principal Dusty Sims at a School Board meeting where he and Superintendent Jacob Oliva praised LEE's for his innovative work and this accomplishment,

~ 9 ~

yet, LEE was consistently passed over promotion because of his race and color;

- LEE created "Cultural Diversity Assignment" which is now used across the school district for students who make racially motivated statements against a protected race or federally protected group. Prior to this creation of LEE, offenders were only suspended from school without any form of education, yet, LEE was consistently passed over promotion because of his race and color;

- Other Community and District Wide Committees Served on African American Mentoring Program's Executive Committee (2009-2015);

- LEE served on District Discipline Review Committee (2009-2013);

- LEE has led a committee of administrators that reviewed discipline procedures;

- LEE sat on a Hiring Committee that considered candidates for the Assistant Director position at the Flagler Technical Institute.

20.     Further, LEE's salary rate was reduced when he moved from FPCHS to the Assistant Principal position at RYMFIRE ELEMENTARY SCHOOL for twelve months when his Caucasian Assistant Principal colleagues kept their rate of pay, or even achieved higher rate of pay. Also prior to some hiring in 2018, job descriptions were changed so that a Principal with no administrative experience could be hired as an Elementary principal. I will begin to outline each job and interview process below. LEE has applied for approximately twelve advancement promotion positions in his career, including but not limited to, Assistant Principal and Principal. To date, FLAGLER SCHOOLS has unlawfully refused to promote LEE for no other reason but for his race and color.

## IX. STATEMENT OF CLAIMS

21.     LEE avers that throughout his 16-years of service in FLAGLER SCHOOLS, he has

been passed over for positions numerous times for Caucasian employees who have less experience,

less certifications or less training.  On several occasions, LEE has trained at their position as an

Administrator or Dean, yet, LEE was consistently passed over promotion because of his race and

color.

22.     **In November of 2019, Belle Terre Elementary (BTES) Assistant Principal (AP)**
**Jessica Deford, a Caucasian female, was hired as the Interim Principal for remainder of the**
**2020 School Year because FLAGLER SCHOOLS prefer Caucasian employees.  No interview**
**and selection process were conducted.**

- Jessica Deford: has 3 years of AP experience and **no School Principal**
  **Certification.**

  - o  LEE have 10+ years administrative experience with 4 years in an
    Elementary School at this time.
  - o  LEE is also School Principal Certified.

- BTES Principal T. Culver retired in November of 2019.

- FLAGLER SCHOOLS moved AP Mike Rinaldi from Flagler Palm Coast High
  School (FPCHS) to fill Deford's former AP position at BTES.

- Hiring of open position made by this move from FPCHS; effectively makes Deford
  the principal of BTES. There are no open positions for administration in the district
  with this move.  This surreptitious action by FLAGLER SCHOOLS was executed
  without a formal interview and selection process because FLAGLER SCHOOLS
  prefers Caucasian employees.

- Three weeks prior, during a tour with an Administrator from another school district
  and local community members, Superintendent Tager told LEE that he "will be a
  principal "and praised his work for leading the professional learning communities
  at Rymfire Elementary School and for his data collection.

- On the same tour, the Superintendent also praised LEE's High Support

~ 11 ~

Intervention Model and the ESE continuum that is now being modeled at Bunnell Elementary School and Old Kings Elementary School due to offering the support that students need for academic success.

23.     **In June of 2019, LEE Interviewed for Flagler Palm Coast High School (FPC) Principal Position. Instead, FLAGLER SCHOOLS selected Tom Russell, a Caucasian male, who was recently fired from his position as the Superintendent at Volusia School.**

- FLAGLER SCHOOLS hired a fired Volusia Superintendent because FLAGLER SCHOOLS prefer Caucasian employees over Black employees in upper management positions

- LEE was told by Dr. Johnson, Leadership Executive Director at the time, that his interview for the position "was the best he has ever done."

- I have 10+ years administrative experience at this time with 6 years in a High School.

- New Principal Mr. Russell hired Mr. Tager as his Asst. Superintendent in Volusia Schools; Mr. Tager basically returns a favor with his hiring after recently being fired.

- LEE was asked about his exercise routine during this interview by a member of the interview committee Dave Halliday, a teacher who was the teacher of the year for FPCHS.

24.     **In November of 2018, FLAGLER SCHOOLS attempted to demote LEE in moving him to the Teen Center Director in order to replace retiring Director Cheryl Massaro.**

- This was a further attempt to deprive LEE of an instructional leadership opportunity. The Teen Center Director position heads the dropout prevention program where students work on virtual course with teachers as proctors and it's not a program where students age 16-25 that have dropped out a come back to a satellite site and take virtual courses under a community grant to earn their GED. This position is without instructional leadership opportunity

  o  As of 12/2019, the job description has not been changed.

  o  They hired a former teacher in that position with no administrative experience.

~ 12 ~

- This was the purported "Big Break" that the Executive Director Team and Superintendent saw for LEE for being a leader. Despite LEE's numerous accomplishments, FLAGLER SCHOOLS sought to discredit LEE's instructional leadership capabilities.

**25. In August of 2018, FPCHS Principal Dusty Sims transferred to FLDOE (FLAGLER SCHOOLS denied LEE an interview opportunity for this position because of his race and color. Bob Wallace, a Caucasian male, was extra-judicially selected for this Principal position upon his retirement from his Principal position at Volusia Schools.**

- Dr. Earl Johnson called LEE and told him that "they are looking for a Principal with 5 years' experience as a Principal for this position."

  - Five years was not a requisite of the written job requirements. LEE avers that he met every requirement of the job description.
  - His five-year extra-judicial pretextual requisite would have eliminated LEE and every Administrator in the school district with the exception of two sitting Principals who basically don't want to leave their schools.
  - LEE was not given the opportunity to interview for the position to which he is highly qualified.
  - Seemingly no interviews were done when FLAGLER SCHOOLS appointed Bob. Wallace as the Principal. Bob Wallace had been retired for 3 years at the time.

- Bob Wallace was quoted in a Flaglerlive blog in stating, "he had told Mr. Tager that if a job had become available in Flagler while he was here that he would be interested in being a Principal here."

- He was unlawfully appointed the Principal position with no interviews for the pool of candidates.

- Bob Wallace put out no Instructional initiatives with his staff and was truly unable to do his job not able to even physically get around the campus. He missed multiple days as a leader of the school as well. He was a horrible hire by the Superintendent Tager and FLAGLER SCHOOLS.

- Bob Wallace announced his retirement 8 months later after being unlawfully hired by FLAGLER SCHOOLS. He never should have been selected and his hiring was

~ 13 ~

based solely on racial animus of LEE's race and Black color.

- o   During his tenure, Bob Wallace hires Mike Rinaldi, a Caucasian male, to the highest-ranking AP position in Flagler, 12-month High School AP.

- o   Mike Rinaldi worked as an AP for 1 year in Volusia after a 5-year stint outside of Education.
- o   Prior to that 5-year stint he had been in Administration.
- o   Point is, Mike Rinaldi ascended to that position with a lot of time removed from education and was subjected to FLAGLER SCHOOLS' interview practice in order to avoid selecting Black candidates.

26.     In July of 2018, LEE Interviewed for the 12-month Assistant Principal Position at MHS.  FLAGLER SCHOOLS unlawfully selected Nicole Castaneirha, a Caucasian female, a Curriculum Specialist with no administrative experience.

- •   Principal Reeves stated that LEE "needed to be more of an instructional leader" as for the reason LEE was not hired.  Same critique the superintendent used just a few weeks earlier to deny me as Principal at Rymfire Elementary; They obviously discussed this.

- •   The point is everybody in the Assistant Principal position are learning some aspect as they operate in the position.  It is the regular practice that Principals leads, trains and develops Assistant Principals in their positions for eventual promotion selection.

27.     In July of 2018, LEE interviewed for the Buddy Taylor Middle School Principal position.  FLAGLER SCHOOLS moved Principal Fanelli to the District Office, and unlawfully selected Bobby Bossardet, a Caucasian male, as Principal.

- •   LEE argues that Bossardet is not a certified trained school Principal.

- o   LEE trained him as a Dean and the beginning stages as an AP on evaluation of teachers.
- o   LEE also has more experience in leadership than Bossardet and LEE holds a certification for School Principal.  This is another clear example of FLAGLER SCHOOLS' unlawfully racial animus in its promotion practice.
- •   LEE argues that upon the hiring of Bossardet, he touted as a veteran Administrator for his work with the Bulldog Academy where many students failed by placement. Way more than 50%. Also, he touted for

~ 14 ~

work with the Bunker students where the students received credits quickly. LEE strongly questions the integrity of this program as stude[...] full year course credits in some instances in 1-2 weeks.

- In the previous school year, LEE basically ran the school him[...] his Principal at the time being out due to family illness matter[...] other Administrator being out a lot due to his wife having [...] medically with a pregnancy.  Diane Dyer, the Execut[...] expressed th[...]

*[handwritten note: 770,357 / Cronk - Step 0 / Stacier Collier - Step 0]*

26.    In Novembe[...]                                         ly selected Katie [...], a Caucasian female, for t[...]                                    mentary School.  Katie Crook had only one-year e[...]

*[handwritten note: 2-15-18 → 5-29-18 / Wife out / Abude out / → Abude out 9 days / for this period / Barb out / 5 Days this / entire period / of time]*

- It should be noted t[...]
- LEE argues that Ka[...]                                      n AP and was a TSC that reported [...]                                         of Teaching and Learning for years [...]
- LEE argues that he[...]                                       l position.  LEE holds a School Prin[...]                                       Also, LEE had made strides with [...]                                       he ROAD Time reinvention at RES___

27.    In June of 2017, FLAGLER SCHOOLS forced LEE to interview for the Wadsworth Elementary School (WES) and Matanzas High School (MHS) at the same time in order to ensure his failure because of his race and color.

- Superintendent Tager, Dr. Johnson and the committee clearly sought to save time by interviewing LEE once in a combined interview.

- No other candidate was compelled to interview for the principal position of two schools at the same time with one being a High School and One being an Elementary.  Both present unique differences that are hard to tie together in one interview. The questions are even different for those schools due to the difference in levels being significant.

28.    In November of 2015, Paula St. Francis retired as Principal from RYMFIRE ELEMENTARY SCHOOL.    FLAGLER SCHOOLS unlawfully selected, Barbara Sauvelpahkick, a Caucasian female, as Principal.  She previously served as Assistant Principal at Rymfire for all 9 years.

~ 15 ~

- LEE interviewed for the position and was considered a finalist under Superintendent Jacob Oliva. He was passed over for this position because of his race and color.

- LEE later became a 12-month AP, but lost his High School rate of pay by moving to an elementary school which other administrators have not lost pay upon moving to a similar position.

29.     In July of 2015, FPCHS Principal Dusty Sims extra-judicially selected Bobby Bossardet, a Caucasian male, for a 12-month Assistant Principal position over LEE because of LEE's race and color, and Anna Crawford, a Caucasian female, was also extra-judicially selected for promotion to a 12-month AP position at FPCHS from a 12-month AP Position at Belle Terre Elementary with absolutely no interview process because of LEE's race and color.

- LEE argues that he had more experience, 6 yrs. to Bossardet's 2yrs at the time, and LEE trained him as a Dean and AP on evaluating teachers.

- Sims said this would be a curriculum position but Bossardet upon getting the position was over the Dean's Office. LEE had worked in the Dean's office as an AP for 5 years and as a Dean for an additional 5 years prior to being an AP and never ascended to the 12- months promotion position.  LEE has experience as an administrator over ESE services, the School Safety Coordinator, over Career and Technical Education and The School Pekins Grant Coordinator.  LEE also was running PL impacting the entire campus at the time on providing accommodations and support to ESE students and students within MTSS

- FLAGLER SCHOOLS by and through FPCHS Dusty Sims gave his friend Bossardet the job by what is commonly known as "stacking" the interview committee with Stacia Collier and Phil DeAugustino who are Bossardet's friends. Collier and DeAugustino were both teachers at the time. The other 2 members were Dr. Pearson and Diane Dyer. Dyer is also a mentor for Mr. Bossardet. Dyer, the executive director of Teaching and Learning, was not a part of my interview but was on the hiring committee. She used an interview according to Mr. Sims that I had done for Principal at BTMS a month or so earlier to make the decision about me as an Assistant Principal. That was an interview for a principal position. This was for an AP something I already had 5 years' experience.

  o  Bossardet would return the favor and accept Collier as his AP at BTMS from OKES in the summer 2019 after Collier asked to be moved.

~ 16 ~

- This would be a promotion with no interview process; Collier as an AP has moved from FPC to OKES to BTMS.   Wonder if there was a reduction in salary as was subjected to with these moves.

- The other main thing here is this, no administrator previously was over the dean's office and served as a 12-month position as an assistant principal. ALSO, every administrator prior to me that was over ESE served as a 12-month Assistant Principal. Not in the cards for me, I guess.

- FPCHS Dusty Sims critique was that LEE had only recently become fired up about being a 12-month AP stating Mr. Bossardet had been asking about it for a while. That is erroneous.   LEE argues that he was already working on his Principal Leadership certification as I was in the Principal Leadership Academy at the time which shows my desire to be a principal going forward.

- LEE had also just interviewed for a Principal position at BTMS. Who cares about asking for a position that was not available?  I applied when it became available.

- FPCHS Dusty Sims said it was a curriculum position, but instead put Bossardet in a management position he was already doing as over the dean's office. In fact, his responsibilities didn't change other than a few more evaluations of teachers which as an AP he should have already had more the years prior.

- Mr. Sims gave this position to his friend Mr. Bossardet not based on ability or accomplishment but based on friendship and nothing else.

- He even cried telling me he knew he was going to hurt me when he had to face me for the first time after I demanded a meeting based on his hiring of Bossardet.

- Prior to the 12-month AP hiring in July 2015, Anna Crawford was assigned to FPC as 12-month AP with no interview process. This was replacing recently retired Mrs. Dupont in this position. Mr. Sims stated that the district leadership desired for Crawford to gain this experience in her quest to be a Principal. This was a promotion and Mrs. Crawford were not required to interview for this position.
  - o Both of these placements propelled both Crawford and Bossardet to receive Principal positions in the years following.

    **30.**   **In June of 2015, Nathan Lovelette, who served as Assistant Principal at Buddy Taylor Elementary School was unlawfully selected as Principal of Buddy Taylor Middle School against the weight of this State's Affirmative Action Laws in F.S. § 110.112 and F.S. § 1000.05, Sub. 2(a).**

## X. STATEMENT OF CLAIMS

31.     LEE specially asserts that FLAGLER SCHOOLS' candidate interview and selection process for promotion is discriminatory, subjective, arbitrary and unlawful pursuant to this State's Affirmative Action Laws in F.S. § 110.112 and F.S. § 1000.05, Sub. 2(a).  LEE states the following:

- FLAGLER SCHOOLS willfully, knowingly and intentionally engaged in adverse and disparate treatment of its Black employees by selecting and promoting its Caucasian colleagues or other applicants who were either less qualified or in some cases, did not meet the minimum qualifications, degrees or certifications.

- Nevertheless, LEE subsequently applied for numerous promotion positions and was unlawfully denied each time because of his race and color.   At the end of each promotion selection process, LEE's Caucasian colleagues were selected even though the candidate would have less experience or training.

- For example, June 23, 2016 and through November 27, 2017, JAWANDA DOVE, a highly competent and respected FLAGLER COUNTY African-American teacher, applied for approximately 26 posted vacancies to include: 10 Assistant Principal positions, 8 Teacher Support Colleague positions, 3 Teacher on Special Assignment positions, 2 Graduation Coach positions, 1 Reading/Literacy Coach position, 2 Classroom Teacher positions. At the end of each promotion process, LEE's Caucasian colleagues were selected for the promotion positions and she was unlawfully denied the promotion because of her race and color.

- On November 4, 2019, Linda Matthews, President of the Flagler County Branch NAACP and Eric Josey, in his official capacity as an Executive Member of the Flagler County Branch NAACP, both of whom were duly authorized to represent DOVE's interest in resolving her grievance, met with Superintendent James Tager, current Human Resources Director Jewel Johnson and School Attorney Kristen Gavin for the Respondent FLAGLER SCHOOLS, to, inter alia, give notice of their unlawful discriminatory practice.  In sum and substance, the Respondent offered no legitimate, non-discriminatory or non-pretextual reason why they refused to promote DOVE and they took no action to change their unlawful practice.

- The FLAGER SCHOOLS is comprised of 10 schools, nearly 13,000 students and 2,500 teachers, staff and employees make up the largest workforce in Flagler County with a population of 110,510. To date, there are approximately 1 Principal, 2 Assistant Principals and 12 teachers of DOVE's Black race and color.

- LEE avers that FLAGER SCHOOLS willfully, knowingly and intentionally violated the State's explicit Equal Opportunity Affirmative Action Law. Instead, FLAGLER SCHOOLS elected to continue and maintain their unlawful, subjective and arbitrary candidate selection policy and practice of mostly Caucasian candidates against the weight of the State's Affirmative Action Law, see F.S. § 110.112 and F.S. § 1000.05 Sub. 2(a).

- LEE further avers that FLAGER SCHOOLS shortly later promoted **Cara Cronk** to a position of Assistant Principal, even though FLAGLER SCHOOLS knew that she **did not meet the posted qualifications of a Master's Degree or higher and had no Certification in Educational Leadership** at the time of her interview and promotion, and yet, FLAGLER SCHOOLS discriminated against DOVE in denying her the promotion to this position that she applied for even though FLAGLER SCHOOLS knew DOVE was wholly qualified for the position.

  *what is any of this re: DOVE*

- LEE avers that on numerous occasions when he applied for a promotion positions, FLAGLER SCHOOLS willfully, knowingly and intentionally withdrew the posted position only to later select her Caucasian colleagues.

  *unclear*

- LEE asserts that FLAGLER SCHOOLS has engaged, and continues to be engaged in various forms of unlawful racial discrimination and disparate treatment of Black employees in various forms of unlawful racial discrimination and disparate treatment of Black employees, for example: **Cari Hankerd**, a Caucasian employee, was promoted from a Guidance Counselor position to an Assistant Principal position at Bunnell Elementary in order to replace **Ester Jackson**, the African-American Assistant Principal at the time. Ester Jackson was demoted from her Assistant Principal position by FLAGLER SCHOOLS because of her race and color, without any just cause or legal justification to do so.

  *Esther Jackson. Performance?*

  *Cari Hankerd hired 17-18-sub? 18-19-instruct 19-20-Admin*

~ 19 ~

- Further, Cari Hankerd belatedly obtained her Educational Leadership certification in January 2019. She did not meet the minimum qualifications of three years classroom teaching experience at the time she was selected by FLAGLER SCHOOLS for the Assistant Principal position as outlined on the posted job description, a benefit and advantage not afforded to Black employees seeking promotion.

- LEE asserts that FLAGLER SCHOOLS has engaged, and continues to be engaged in various forms of unlawful racial discrimination and disparate treatment of Black employees in promotion, for example: **Donelle Evenson**, a Caucasian employee, was promoted from a Literacy Coach position directly to an Assistant Principal position at Bunnell Elementary.

*Female employee*

- LEE asserts that FLAGLER SCHOOLS has engaged, and continues to be engaged in various forms of unlawful racial discrimination and disparate treatment of Black employees in promotions, for example: **Jessica Fries**, a Caucasian employee, was promoted from her Classroom Teacher position to an Assistant Principal at Old Kings Elementary. Jessica Fries **did not have a degree or certifications** at the time FLAGLER SCHOOLS selected her for the position. Jessica Fries belatedly obtained her certification in October 2019, a benefit and advantage not afforded to Black employees seeking promotion.

?

- LEE asserts that FLAGLER SCHOOLS has engaged, and continues to be engaged in various forms of unlawful racial discrimination and disparate treatment of Black employees in promotions, for example: **Nicole Castanheira**, a Caucasian employee, was recently promoted from her Curriculum Specialist position to an Assistant Principal at Matanzas High School. Nicole Castanheira was promoted to Assistant Principal graduating from school.

?

- LEE asserts that FLAGLER SCHOOLS has engaged, and continues to engage in a systemic and various forms of unlawful racial discrimination and disparate treatment of Black employees in promotions, for example: This year alone in 2019, FLAGLER SCHOOLS selected and promoted four (4) Caucasian female colleagues to Assistant Principal positions in Elementary Schools Katherine Crooke with less experience and training, was promoted from her former Teacher Support Colleague position.

~ 20 ~

- Leigh Osypian- younger and less experienced, and the spouse of FLAGLER SCHOOLS' former Human Resources Director Ben Osypian. Leigh Osypian served as AP for a year and resigned.

- Amy Neuenfeldt- a Caucasian female and less experienced than DOVE, was promoted to the Teacher Support Colleague position over DOVE, to gain middle school experience and to be groomed to serve in her current position as Assistant Principal. DOVE was passed over for this position because of Black race and color.

*what is all of this Dove about, ø respond to as ø related*

- LEE avers that FLAGER SCHOOLS unlawfully, discriminatorily and arbitrarily demoted at least two Black Assistant Principals, **Ester Jackson** and **Angela Owens**, from their positions without just cause and because of their race and color, and they were replaced by Caucasian colleagues.

*ø time but Frame ø ø less all years in Florida + admin ø loss ø pay*

*Just cause to demote AP's*

## XI. CONTINUING VIOLATION EXCEPTION

32.     Despite the limitations period set forth in Title VII, claims that accrued prior to the 180-day or 300-day period can be deemed timely filed if the claimant can establish the existence of a substantial nexus between the time-barred claims and the timely-asserted acts, in accordance with the "continuing violation" exception. *See Roberts v. Gadsden Memorial Hospital*, 835 F.2d 793 (11th Cir.1988).

33.     The continuing violation exception applies when there is evidence of an ongoing discriminatory practice or policy as in LEE case. Although discrete incidents of discrimination that are not the result of a discriminatory practice or policy will not ordinarily amount to a continuing violation, if the evidence indicates that specific and related instances of discrimination are permitted by an employer to continue unremedied for so long as to amount to a practice or policy, a continuing violation may arise. *See Roberts*, 835 F.2d 793. The *Roberts* Court cautions,

~ 21 ~

however, that the "continuing violation doctrine does not exist to give a second chance to an employee who allowed a legitimate Title VII claim to lapse." *Id.* at 800.

34.     In order to determine whether otherwise barred claims fall within the continuing violation exception, courts consider whether the claims are related in subject matter and frequency and whether the alleged violations were permanent in the sense that they served to trigger the employee's awareness that her civil rights had been violated.  *See id.* at 800-801; *Robinson v. Caulkins Indiantown Citrus Co.*, 701 F. Supp. 208, 211 *1199 (S.D.Fla.1988). If, however, a substantial nexus is proven, thereby establishing a continuing violation, a plaintiff is entitled to have a court consider all relevant acts, including those that would otherwise be time-barred, as long as one or more of the related acts occurred within the statutory time frame. *See Roberts*, 835 F.2d at 799.

35.     LEE argues that, in addition to his two timely-asserted claims, his asserted claims discrimination that occurred prior to the 300-day period should also be considered by the Court because they are relevant to illustrate a pattern of race and color discrimination, and its effect on the complainant in determining whether an adverse and disparate work environment existed.  LEE essentially argues that the continuing violation exception should apply to the pre-March 2019 incidents for reason of an existence of a "substantial nexus between the time-barred claims and the timely-asserted claims," as required under the continuing violation theory. *See, e.g. Roberts*, 835 F.2d at 801; *Robinson*, 701 F. Supp. at 211.

## XII.  UNLAWFUL DISPARATE TREATMENT

36.     Under Title VII, a Complainant of a disparate-treatment action must establish "that they had a discriminatory intent or motive" for taking a job-related action.  In LEE's case,

FLAGLER SCHOOLS' numerous and consecutive denials of promotion positions for which LEE is qualified, the denials of such promotions being because of LEE's race and color pursuant to an illicit practice and contrary to the State's anti-discrimination statutes shall constitute such "discriminatory intent or motive." See *Watson v. Fort Worth Bank & Trust, 487 U. S. 977 at 986*. This doctrine was read into the act in Griggs v. Duke Power Co., which interpreted the Act to prohibit, in some cases, employers' facially neutral practices that, in fact, are "discriminatory in operation."

37.    The Griggs Court stated that the "touchstone" for disparate-impact liability is the lack of "business necessity": "If an employment practice which operates to exclude [minorities] cannot be shown to be related to job performance, the practice is prohibited." See *Watson v. Fort Worth Bank & Trust, 487 U. S. 977 at 986, and at 432* (employer's burden to demonstrate that practice has "a manifest relationship to the employment in question"), *Albemarle Paper Co. v. Moody, 422 U. S. 405, 425 (1975)*.

38.    If an employer met its burden by showing that its practice was job-related, the plaintiff is required to show a legitimate alternative that would have resulted in less discrimination. See *Albemarle Paper Co. v. Moody, 422 U. S. 405, 425 (1975)* (allowing complaining party to show "that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest"). LEE argues that FLAGLER SCHOOLS' recalcitrant violation this State's Affirmative Action Plan and F.S. and Fla. Sta. Sec. 1000.05, Sub. 2(a), is DIRECT EVIDENCE of "such other tests or selection devices without a similarly undesirable racial effect, would also serve the employer's legitimate interest" as a matter of law.

39.    Twenty-years after Griggs, the Civil Rights Act of 1991 was enacted. This Act included a provision codifying the prohibition on disparate-impact discrimination. Under the

disparate-impact statute, a plaintiff establishes a prima facie violation by showing that an employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin."  42 U. S. C. §2000e–2(k)(1)(A)(i).  An employer may defend against liability by demonstrating that the practice is "job related for the position in question and consistent with business necessity."  42 U. S. C. §2000e–2(k)(1)(A)(i).

40.    Even if the employer meets that burden, however, **a plaintiff may still succeed by showing that the employer refuses to adopt an available alternative employment practice that has less disparate impact and serves the employer's legitimate needs.**   42 U. S. C. §§2000e–2(k)(1)(A)(ii) and (C).  Here, LEE will be able to show that FLAGLER SCHOOLS refuse to adopt the State's requisite AFFIRMATIVE ACTION PLAN, an available alternative employment practice, that has less disparate impact, serves the employer's legitimate needs and it is State law.

41.    In *Griggs v. Duke Power Co.*, the Supreme Court decides that where an employer uses a neutral policy or rule, or utilizes a neutral test, and this policy or test disproportionately affects minorities or women in an adverse manner, then the employer must justify the neutral rule or test by proving it is justified by business necessity is that it complies with State law.  The Court reasons that Congress directed the thrust of Title VII to the consequences of employment practices, not simply the motivation.  This decision paves the way for EEOC and charging parties to challenge employment practices that shut out groups if the employer cannot show the policy is justified by business necessity.

42.    In *McDonnell Douglas Corp. v Green*, the Supreme Court holds that a charging party can prove unlawful discrimination indirectly by showing, for example, in a promotion case that: (1) the charging party is a member of a Title VII protected group; (2) he or she applied and

*[handwritten margin notes: "of not", "he applied along w/ other candidates", "employer did not seek applicants w/ similar qualification"]*

was qualified for the position sought; (3) the job was not offered to him or her; and (4) the employer continued to seek applicants with similar qualifications. Here, LEE argues that his claims herein proves these four elements in FLAGLER SCHOOLS denying his promotions. The employer must then show a legitimate lawful reason why the individual was not promoted. The employee still may prevail if he discredits the employer's asserted reason for not hiring him.

## XIII. DIRECT EVIDENCE OF DISCRIMINATION IN VIOLATION OF STATE LAW

43.     Under the direct evidence method, LEE's complaint shows by substantial credible evidence that his Title VII protected class status was a motivating factor in the FLAGLER SCHOOLS' unlawful job actions of passing him over for promotion numerous consecutive times because of his race and color.

44.     LEE may offer direct evidence, e.g. that the Respondent FLAGLER SCHOOLS admitted that it was motivated by discriminatory intent or **that it acted pursuant to a practice or policy that is discriminatory on its face.**   Facially discriminatory policies are only permissible if gender, national origin, or religion is a bona fide occupational qualification for the position in question, however; **Race or color can never be a bona fide occupational qualification!**

45.     Here in LEE, FLAGLER SCHOOLS continue to act pursuant to its illicit practice and implicit "policy in arbitrarily selecting candidates for promotion based on race and color that is discriminatory on its face."     Further, LEE asserts that the aforementioned NAACP representatives gave notice to FLAGLER SCHOOLS that their procedures, policies and practice in interviewing and selecting candidates for promotion is in direct violation of this States' Affirmative Action Law pursuant to F.S. § 110.112.

46.    Accordingly, FLAGLER SCHOOLS disregarded their notice and willfully, knowingly and intentionally continues to act discriminatorily to Black employees in advancements, leadership training and promotions which, standing alone, constitutes **direct evidence** of unlawful racial animus against Black employees as a matter of law.

47.    LEE may offer any of three types of circumstantial evidence which may include "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." See *Troupe v. 20 May Department Stores, 20 F.3d 734, 736 (7th Cir. 1994).*  *Protected class includes women*

48.    LEE may offer evidence that **other, similarly-situated employees not in the protected class received systematically better treatment.** See *Marshall v. American Hospital Association, 157 F.3d 520 (7th Cir. 1998).*

49.    LEE's totality of evidence will show that he is qualified for the promotion positions he applied for and that Caucasian employees got the promotion time and time again. The FLAGLER SCHOOLS offered no reason for its decision. This type of circumstantial evidence is substantially the same as the evidence required by the McDonnell Douglas framework.

50.    LEE avers that the FLAGER SCHOOLS' candidate promotion practice in interviewing and selecting candidates for promotion without any requisite participation from an "affirmative action-equal employment opportunity officer" as required in F.S. § 110.112 is **Direct Evidence** of FLAGLER SCHOOLS discrimination and racial animus. Further, the Florida Department of Education has neither authored and promulgated an "Affirmation Action Plan" and accordingly, the FLAGLER SCHOOLS failed to promulgate any corresponding candidate



Not Required or applicable

{ 26 }

selection and promotion policies that is consistent with this State's required Affirmative Action Plan.

51.    The Florida Legislators saw fit to pass law that supports the policy of this State to assist in providing the assurance of equal employment opportunity through programs of affirmative and positive action that will allow full utilization of women, minorities, and individuals who have a disability.

52.    The head of each executive agency shall develop and implement an affirmative action plan in accordance with rules adopted by the department and approved by a majority vote of the Administration Commission before their adoption.

53.    Each executive agency shall establish annual goals for ensuring full utilization of groups underrepresented in the agency's workforce, including women, minorities, and individuals who have a disability, as compared to the relevant labor market, as defined by the agency. Each executive agency shall design its affirmative action plan to meet its established goals.

F.S. § 110.112(d) provides:

> "An affirmative action-equal employment opportunity officer shall be appointed by the head of each executive agency. The affirmative action-equal employment opportunity officer's responsibilities must include determining annual goals, monitoring agency compliance, and providing consultation to managers regarding progress, deficiencies, and appropriate corrective action."

## COUNT I

## TITLE VII VIOLATIONS

### XIII. RACE - DISPARATE TREATMENT

54.    The Complainant re-allege and incorporate by reference paragraphs 1 – 53, above with the same force and effects as if fully set out in specific detail herein below.

55.     LEE has been, and continue to be, discriminated against by the Respondent because of his race and color, a Dark Brown African-American, in terms of denied higher wages/compensation, denied promotions, denied advancement in job assignments, and other denied terms, conditions and privileges of her employment.

56.     The candidate promotion selection policy and practice of the Respondent have, and continue to have, a disparate impact on African-American employees including the Complainant.

57.     Jobs which could potentially result in promotions for the Complainant at times are posted and withdrawn only after the Complainant applied for the position and is instead given to other Caucasian employees.

58.     African-Americans employees, including the Complainant, are passed over for promotion and remain in their lower salary position than those offered and given to Caucasian employees.

59.     LEE have been denied numerous consecutive promotions for which he was qualified and in which they have expressed an interest.  The positions are instead given to Caucasian employees with lower qualifications and/or seniority.  The Complainant has been denied these positions because of their race and color, dark brown African-American, and because FLAGLER SCHOOLS, through its agents and employees, has a racial animus against African-Americans.

60.     The criteria utilized by FLAGLER SCHOOLS in making the candidate selections for promotion decisions, for better and higher paying positions is discriminatory, subjective, arbitrary and unlawful pursuant to the States Affirmative Action Law F.S. § 110.112.

61.     FLAGLER SCHOOLS has unlawfully denied the Complainant opportunities to be selected for better and higher paying positions.

62.     The Complainant has been, and continue to be, directly affected by the discriminatory practices described in this complaint. This includes being deprived of the opportunity of working in an environment free of racial discrimination and would have been promoted in the absence of the alleged discrimination.  Such discrimination also denied the Complainant, and those similarly-situated, the opportunity of working in a fully racially integrated work environment, which otherwise adversely affects their opportunity for enjoyment to work.

63.     The systemic discrimination set forth herein also further adversely affects the Complainant and other African-Americans' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

64.     In the absence of such racial discrimination, the named Complainant and those similarly-situated would have a greater opportunity not for their discriminatory and unlawful policies and practices as it relates to higher wages/compensation, promotions, job assignments advancement, and other terms, conditions, and privileges of employment.  By having members of their own race integrated into such processes, LEE and other African-Americans employees' conditions in all of the foregoing respects would have been significantly improved and they would have been less likely to have been subjected to racial bias in such decisions to the same degree that they have been.

65.     The Respondent's policy and practice of racial discrimination deprives African-American employee, including the Complainant, of opportunities regarding wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment.

66.     Even in those instances in which they have not been personally deprived of promotions, wages/compensation, job assignments, and other terms and conditions of

employment, their employment status has been adversely affected by similar discriminatory treatment of other African-American employees as set forth in this Complaint.

67.     LEE verbally opposed the racial discrimination to which he, and other African-American employees, were subjected.

68.     The unlawful actions of the Respondent, as set forth above, constitute a practice, pattern, custom or policy of FLAGLER SCHOOLS' for allowing acts of racial discrimination and/or disparate and adverse treatment in violation of its employees' federally protected rights.

69.     The Respondent knew, should have known and was made aware of the aforementioned racial discrimination by the Complainants several internal complaints and Flagler County Branch NAACP representative's meetings with FLAGLER SCHOOLS.

70.     The Respondent failed to take any prompt and effective action that may have prevented and/or remedied the racial discrimination and disparate treatment of the Complainant.

71.     The actions of the Respondent did in fact violate the provisions of Title VII of the Civil Right Act.  As a result of the Respondent's actions, has been and continue to be injured, suffering emotional distress, humiliation before her peers, loss of prestige, mental anguish, emotional pain and suffering and a gross monetary and economic loss of income.

## COUNT II

### 42 U.S.C. § 1981 VIOLATIONS

### XIV.  RACE - DISPARATE TREATMENT

72.     The Complaint re-allege and incorporate by reference paragraphs 1 – 71, above with the same force and effects as if fully set out in specific detail herein below.

73.     The named Complainant and has been, and continue to be, discriminated against by FLAGLER SCHOOLS and its governing SCHOOL BOARD, because of Black race and dark

brown colored skin, in the terms of higher wages/compensation, promotions, job assignment advancements, and other terms, conditions and privileges of her employment.

74.    The Respondent has engaged in, and continues to engage in, an egregious and unlawful pattern and practice of discrimination against its African-American employees, including the Complainant, with respect to higher wages/compensation, promotions, job assignment advancements, discipline, and other terms, and conditions, and privileges of their employment.

75.    The selection procedures of the Respondent have, and continue to have, a disparate impact on all FLAGLER SCHOOLS African-American employees, including LEE.

76.    Jobs which could potentially result in promotions for LEE and other Black employees are either not posted, posted and withdrawn or are instead given to Caucasian employees.

77.    African-Americans employees, including LEE, are often relegated or forced to remain stagnant in lower positions and salary than those given to Caucasian employees.

78.    LEE and other Black employees have been denied promotions for which they were qualified and in which they have expressed an interest, while the positions are instead given to Caucasian employees with lower qualifications and/or seniority. LEE and other Black employees have been denied these positions because of their African-American race and Black or Brown color because FLAGLER SCHOOLS, through its agents and employees, has a racial animus against African-Americans.

79.    The criteria utilized by FLAGLER SCHOOLS in making selection decisions for better and higher paying positions are discriminatory and unlawful pursuant to the States' Affirmative Action Plan and Policy under F.S. § 110.112.

80.    LEE and other Black employees continue to be directly affected by the discriminatory practices described in this Complaint. This includes being deprived of the opportunity of working in an environment free of racial discrimination and the opportunity to be supervised and work with persons of their own race who would have been promoted in the absence of the alleged discrimination. Such discrimination also denies LEE and other Black employees the opportunity of working in a fully racially integrated work environment and otherwise adversely affects their opportunity for enjoyment to work.

81.    The systemic discrimination set forth herein also further adversely affects LEE and other African-Americans' status as employees by promoting and reinforcing racial stereotypes and racial bias in the workplace.

82.    In the absence of such racial discrimination, LEE and other African-Americans would have a greater opportunity of both supervising and being supervised by persons of their same race, and having persons of their race integrated into the decision-making process as it relates to wages/compensation, promotions, job assignments, discipline, discharge, and other terms, conditions, and privileges of employment. By having members of their own race integrated into such processes, the LEE and other African-American employees' conditions in all of the foregoing respects would have been significantly improved and they would have been less likely to have been subjected to racial bias in such decisions to the same degree that they have been.

83.    FLAGLER SCHOOLS' policy and practice of racial discrimination deprives African-American employees, including LEE, of opportunities regarding higher wages/compensation, promotions, advancement in job assignments, discipline, discharge, and other terms, conditions, and privileges of employment.

84.     Even in those instances in which they have not been personally deprived of promotions, higher wages/compensation, advancement in job assignments, and other terms and conditions of employment, their employment status has been adversely affected by similar discriminatory treatment of other African-American employees as set forth in this Complaint.

85.     The evidence will show that LEE was unlawfully passed over promotion on numerous occasions by FLAGLER SCHOOLS because of its racial animus.

86.     The unlawful actions of the Respondent, as set forth above, constitute a practice, pattern, custom or policy of FLAGLER SCHOOLS for allowing acts of racial discrimination in violation of its employees' federally protected rights and States rights under F.S. § 110.112.

87.     The actions of FLAGLER SCHOOLS violated Title VII and § 1981.

88.     As result of the actions of the Respondent, LEE continues to be injured, suffering distress, humiliation, loss of prestige, mental anguish, emotional pain and suffering and monetary and economic losses.

## COUNT III

### TITLE VII VIOLATIONS

#### XV. RACE - DISPARATE IMPACT

89.     The Respondent re-allege and incorporate by reference paragraphs 1 – 88, above with the same force and effects as if fully set out in specific detail herein below.

90.     LEE has been subjected to systemic racial discrimination including, but not limited to, a pattern and practice of intentional discrimination and an illicit promotion scheme to deprive Black employees of quality of life in promotion opportunities having an unlawful disparate impact on African-American employment opportunities. Such racial discrimination includes a policy and practice of restricting African-Americans' employment opportunities to the lower classification

and compensation levels. The systemic means of accomplishing such racial discrimination include, but are not limited to, FLAGLER SCHOOLS's posting of promotion positions, interview and selection procedures, unequal terms and conditions of employment.

91.    FLAGLER SCHOOLS' candidate interview and selection for promotion procedures incorporate the following racially discriminatory practices:

a)  reliance upon subjective procedures and criteria which permit and encourage the incorporation of racial stereotypes and bias of Black employees;

b)  refusal to establish or follow this States' lawful policies, procedures, or criteria that reduce or eliminate disparate impact and/or intentional racial bias or stereotypes in such Respondent's' decision-making process pursuant to the States' F.S. § 110.112;

c)  refusal to fairly post, announce vacancies of employment opportunities in a manner that allows all employees to learn about such opportunities and compete for them;

d)  pre-selection of Caucasian employees before vacancies or opportunities become known;

e)  discouragement of Black applicants and expressions of interest through a reputation for racial bias process, unequal terms and conditions of employment in such areas as higher compensation and advancement in assignments.

92.    Respondent's candidate selection for promotion procedures have a disparate impact on Black employees largely because FLAGLER SCHOOLS refuse to comply with this States' Affirmative Action Law F.S. § 110.112.  Such procedures are not valid or justified by business necessity. Although NAACP gave FLAGLER SCHOOLS notice of their unlawful promotion policies, FLAGLER SCHOOLS outright refused to comply with the States' objective and structured selection procedures available to FLAGLER SCHOOLS which have less disparate impact on African-Americans and equal or greater validity and job relatedness, but the Respondent has refused to consider or to use the States' requisite "Affirmative Action Plan."

93.     FLAGLER SCHOOLS' compensation and selection procedures are intended to have a disparate impact on Black employees.

94.     FLAGLER SCHOOLS' compensation and selection procedures have adversely affected qualified Black employees, including but not limited to, the following: not hiring or promoting African-Americans in the traditionally Caucasian classification and compensation levels; assigning African-Americans to inferior job positions, pay rates, and other unequal terms and conditions of employment; and encouraging or ratifying racially hostile conditions of work and racially demeaning stereotypes regarding the capabilities, motivation and interests of African-Americans.

95.     FLAGLER SCHOOLS has also continuously engaged in, condoned and ratified discrimination which constitutes a continuing violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended, and 42 U.S.C. §1981, as amended.

96.     LEE had no plain, adequate, or complete remedy of law to redress the wrongs alleged herein, and this action for back-pay, an injunction other equitable relief, and a declaratory judgment is their only means of securing adequate equitable relief. LEE is now suffering and will continue to suffer irreparable injury from FLAGLER SCHOOLS' unlawful policies and practices as set forth herein unless enjoined by this agency.

97.     By reason of the Respondent's discriminatory employment practices, LEE has experienced harm, including loss of compensation, back and front pay, and other employment benefits.

## COUNT IV

## TITLE VII VIOLATIONS

### XVI. 42 U.S.C. § 1981 VIOLATIONS

98.    The Respondent re-alleges and incorporates by reference paragraphs 1-97, above with the same force and effect as if fully set out in specific detail herein below.

99.    The Complainant has been treated less favorably than his Caucasian colleagues in the terms and conditions of his employment and promotion selection rules and policies that are applied differently to the Complainant than his Caucasian counterparts.

100.    During the course of his employment, LEE was denied proper training and has been passed over numerous promotions and higher pay rate opportunities based on his race and color of a dark brown skinned African-American.

101.    As a direct result, LEE has been summarily denied leadership training for higher positions and other promotional opportunities to which he is qualified for.

102.    FLAGLER SCHOOLS arbitrary post and remove vacancy announcements for advancement and promotions positions.  FLAGLER SCHOOLS have a practice and a custom of merely selecting less qualified Caucasian employees for these positions with an unlawful discriminatory interview and selection process.   This custom and practice by FLAGLER SCHOOLS discriminatorily and arbitrarily denies African-American employees the opportunities for advancement, promotions and higher pay/benefits.

103.    Their unlawful discrimination against the weight of federal and State laws results in qualified African-Americans receiving lower pay increases and less hourly rates than less Caucasian counterparts.

104.    LEE is now paid less than his Caucasian colleagues who were promoted with less or no qualifications for the same positions LEE applied for,

105.   LEE was denied numerous promotions to positions which would have been afforded higher pay and prestige to which his Caucasian colleagues now enjoy.

## **PRAYER FOR RELIEF**

WHEREFORE, any response by the Respondent FLAGLER SCHOOLS regarding their selection of candidates for promotion, and their candidate interview and selection process that does not conform to this State's Affirmative Action Law in F.S. § 110.112 and F.S. § 1000.05, Sub. 2(a)., must be deemed discriminatory, pretextual, subjective, arbitrary and unlawful.

Complainant TRAVIS LEE, now respectfully requests that the UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION thoroughly investigate his charge of racial employment discrimination, find *probable cause* that the Respondent FLAGLER SCHOOLS, by and through its governing SCHOOL BOARD, engaged in unlawful racial employment discrimination, convene a mediation proceeding or duly file this cause in the United States District Court of Middle Florida on his behalf to obtain the following relief unless otherwise settled. The Complainant now moves for the following relief:

a.   Acceptance of jurisdiction of this cause;

c.   A declaratory judgment ORDER declaring that the Respondent's employment practices challenged herein are illegal and in violation of Title VII, the Civil Rights Act of 1866, codified at 42 U.S.C. § 1981;

d.   A temporary and permanent injunction against FLAGLER SCHOOLS and its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by FLAGLER SCHOOLS set forth herein;

e.      An ORDER requiring FLAGLER SCHOOLS to initiate and implement requisite Affirmative Action policies pursuant to F.S. § 110.112 that provide (i) equal employment opportunities for African-American employees; (ii) remedy the abject effect of the FLAGLER SCHOOLS' past and present unlawful employment practices; and (iii) eliminate the continuing effects of the discriminatory and retaliatory practices described above;

f.      An ORDER directing FLAGLER SCHOOLS to initiate and implement systems of assigning, training, transferring, compensating, and promoting African-American employees in a non-discriminatory manner pursuant to the States' Affirmation Action Law F.S. § 110.112;

g.      An ORDER establishing a task force on equality and fairness to determine the effectiveness of the programs described in (e) and (f), above, which would provide for (i) the monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (e) and (f), above;

h.      An ORDER directing FLAGLER SCHOOLS to immediately promote the Complainant to the position of Principal that he is qualified for, and would have been occupying, but for the FLAGLER SCHOOLS' discriminatory practices;

i.      An ORDER directing FLAGLER SCHOOLS to retroactively adjust the wage rates and benefits for the Complainant for the past (3) three years, which he would have been enjoying but for FLAGLER SCHOOLS' discriminatory practices;

j.      An ORDER award of back pay; front pay; lost job benefits; preferential rights to jobs, and other equitable relief for the Respondent. See *Teamsters v. United States, 431 U.S. 324 (1977)*;

k.     An award of nominal, compensatory and punitive damages for all legal relief sought in this complaint;

l.     An award of litigation costs and expenses, including reasonable attorney's fees to the named Complainant;

m.     Prejudgment interest; and

n.     Grant any and all appropriate relief, which this agency may obtain from the Court as deemed necessary and appropriate.

Respectfully Submitted,

Eric Josey,
*Representative for Complainant*
PUBLIC SERVICE PREMIER CONSULTING, LLC.
250 Palm Coast Pkwy NE
Suite 607, PMB 173
Palm Coast, Florida 32137
Phone: (917) 882-1330
Email: Premier.Consulting173@aol.com

<u>Complainant</u>

TRAVIS LEE,
14 Renn Lane
Palm Coast, Florida 32164
Phone: (386) 214-2365
Email: tamtkflee@yahoo.com

<u>Respondents</u>

FLAGLER SCHOOLS
1769 East Moody Blvd. #2
Bunnell, Florida 32110
Phone: (386) 437-7526

**SCHOOL BOARD MEMBERS**
1769 East Moody Blvd. #2
Bunnell, Florida 32110
Phone: (386) 437-7526

District 1 - Andy Dance
email: dancea@flaglerschools.com

District 2 - Janet McDonald (Chairperson)
email: mcdonaldj@flaglerschools.com

District 3 - Colleen Conklin (Vice-Chair)
email: conklinc@flaglerschools.com

District 4 - Trevor Tucker
email: tuckert@flaglerschools.com

District 5 - Dr. Maria P. Barbosa
email: barbosam@flaglerschools.com

School Board Attorney
Kristy Gavin
Email: gavink@flaglerschools.com

*Exhibit "D"*

James T. Russell

213 W. Cherry Place

DeLand, FL 32724

Email: russell.james834@gmail.com

**Career Objective:**

To effectively serve as the principal of Flagler Palm Coast High School by creating a safe learning environment for students and staff, providing instructional leadership to the faculty, implementing proactive academic and behavioral interventions to enhance student achievement and directing efficient management of the school facility.

**Summary of Skills:**

- 21 years of experience as an educational leader
- Building positive school cultures and purpose driven administrative teams
- Instructional leader that focuses on planning and standards aligned instruction
- Developing positive relationships with stakeholders throughout the community
- Excellent communication, interpersonal and leadership skills
- Knowledge of budget preparation and financial management

**Administrative Experience:**

- 2015 - 2019 Superintendent of Volusia County Schools
- 2011 - 2015 Area Superintendent of Volusia County Schools
- 2007 - 2011 Principal of Pine Ridge High School
- 2004 - 2007 Principal of Deltona Middle School
- 1999 - 2004 Assistant Principal DeLand High School
- 1998 - 1999 Assistant Principal Silver Sands Middle School

**Education:**

- Master of Science in Educational Leadership
  Nova Southeastern University
- Bachelor of Arts
  Florida State University

**References:**

On request