## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

TRAVIS LEE,

     Plaintiff,

v.                            Case No. 3:20-cv-553-BJD-MCR

FLAGLER COUNTY SCHOOL
BOARD,

     Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant's Motion for Summary

Judgment (Doc. 44) and the related briefing (Docs. 46–47).

### A. Background

Plaintiff sues Defendant for violating Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-2 (Count I) and Florida Statute § 110.112 (Count II)

for allegedly violating laws prohibiting discrimination in the workplace. (Doc.

9 at ¶ 11). Plaintiff is an African American employee who has worked as an

educator with Flagler County Schools since 2004 and has served as an

assistant principal since 2009. (See Doc. 9 at ¶ 23); (see also Doc. 46.1 at 1).

Plaintiff has a "bachelor's degree in Physical Education" and a "master's

degree in Educational Leadership[.]" (Doc. 46.1 at 2). Plaintiff completed

training at the North East Florida Educational Consortium's (NEFEC)
Principal Leadership Academy in 2016. Id.

Plaintiff argues he was passed over four times for promotions. Id.; (see
also Doc. 9 at ¶¶ 18, 29).  First, in 2015, Plaintiff argues a white man was
hired as Principal of Flagler Palm Coast High School when the candidate had
only one year experience as an assistant principal compared to Plaintiff's six
years of experience. (Doc. 46.1 at 3).[1] Then, in 2018, Plaintiff argues a white
woman was hired as principal of Matanzas High School when Plaintiff had
the NEFEC principal certification and the other candidate did not. Id. Then,
in 2019, a principal vacancy opened at Belle Terre Elementary School. Id.
Plaintiff argues a white woman was selected as the interim principal and
given a pay raise, that the interim position was not posted, and that no
candidate selection interview was held before the position was filled. Id.
Plaintiff finally argues that "Defendant has not hired a Black [a]ssistant
[p]rincipal since creating their new [ ] panel interview candidate selection
process[.]" Id.

---

[1] The Court notes that while Plaintiff does not provide any evidence in support of the
allegation, that Plaintiff alleges in his Second Amended Complaint that in June 2019, he
"interviewed for the Flagler Palm Coast High School Principal" position. (Doc. 9 at ¶ 18).
Defendant addresses this allegation in its motion for summary judgment (Doc. 44 at 5–7),
and Plaintiff only presents an additional affidavit about an occurrence in 2015, not 2019 as
alleged in his Second Amended Complaint (Doc. 46.1 at ¶ 11).

Before suing, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), which declined to retain the case. (Doc. 9 at ¶¶ 7–8). Within that complaint, Plaintiff highlighted two incidents in 2019 that the Court will explain further.

### a. *The June 2019 Incident*

In June 2019, Plaintiff alleged he interviewed for the principal position at Flagler Palm Coast High School and that a white man was hired over Plaintiff. (Doc. 9 at ¶¶ 18, 29). Ten applicants applied for the position. (Doc. 44 at 6). Defendant presents evidence that the eventual hire, Mr. Russell, had experience as a principal of a middle and high school, collectively working at each for seven years. (Doc. 44 at 6, 73). Additionally, Mr. Russell had served as the Superintendent of Volusia County Schools for four years before being selected as the principal of Flagler Palm Coast High School. (Doc. 44 at 6, 73). Plaintiff provides no additional evidence about the June 2019 hiring incident. (See generally Doc. 46).

### b. *The November 2019 Incident*

In November 2019, Plaintiff argues he "was denied an opportunity to interview for  a promotion [p]rincipal position at Belle Terre Elementary" School. (Doc. 9 at ¶ 19). Defendant asserts this position "was never posted by Defendant or open to applications whatsoever, because it was an unanticipated mid-school year vacancy for which the superintendent of

Flagler County Schools determined it as in the best interests of the staff and students to appoint the then-assistant principal [ ] as interim principal." (Doc. 44 at 7). Plaintiff neither rebuts nor addresses this argument directly. (See generally Doc. 46).

### B. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. Fed. R. Civ. P. 56(c). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995).

## C. Discussion[2]

Title VII prohibits employers from "fail[ing] or refus[ing] to hire . . . any individual, or otherwise to discriminate against any individual with respect

---

[2] Plaintiff asserts parallel race discrimination claims under Title VII and the Florida Civil Rights Act of 1992 (FCRA). (See Doc. 9 at ¶ 11). "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, the state-law claims do not need separate discussion and their outcome is the same as the federal ones." <u>Alvarez v. Royal Atl. Devs., Inc.</u>, 610 F.3d 1253, 1271 (11th Cir. 2010) (citation omitted). Plaintiff asserts that Defendant violated section 110.112 of the Florida Statutes, by selecting white candidates. (See Doc. 9 at ¶ 27). Section 110.112 provides that "[a]ny individual claiming to be aggrieved by an unlawful employment practice may file a complaint" as provided by the FCRA. Fla. Stat. § 110.112(5)–(6). Therefore, to the extent that Plaintiff is bringing a claim under section 110.112, that claim is not separate from the FCRA claim. In sum, the same analysis governs both of Plaintiff's discrimination claims.

to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1). A Title VII "disparate treatment" claim requires evidence of "intentional discrimination." Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313 (11th Cir. 1994).

The plaintiff's burden is to show that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative of the employer's decision." Univ. of Texas SW Med. Center v. Nassar, 570 U.S. 338, 343 (2013). "'Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.'" Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

Absent direct evidence, as is the case here, a plaintiff may rely on circumstantial evidence of discrimination or retaliation. Circumstantial evidence may consist of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). In such circumstances, the Court applies the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1255 (11th Cir. 2012); Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d

- 6 -

1270, 1274–76 (11th Cir. 2002). Under the <u>McDonnell Douglas</u> framework, the plaintiff bears the initial burden of establishing a <u>prima facie</u> case of discrimination by showing that 1) he "is a member of a protected class," 2) he "applied for and was qualified for an available position," 3) he "was rejected," and 4) "that the defendant filled the position with a person outside of the protected class." <u>Walker</u>, 286 F.3d at 1275. Plaintiff and Defendant both agree these four elements are necessary to establish a <u>prima facie</u> failure to hire claim. (<u>See</u> Docs. 44 at 11; 46 at 2).

If the plaintiff presents a <u>prima facie</u> case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," and the burden of production then shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254–56 (1981); <u>Chapter 7 Trustee</u>, 683 F.3d at 1255.

If the employer meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination or retaliation and was not the "true reason for the employment decision." <u>Burdine</u>, 450 U.S. at 256; <u>see also</u> <u>Holifield v. Reno</u>, 115 F.3d 1555, 1565 (11th Cir. 1997) <u>abrogated on other grounds by</u> <u>Lewis v. City of Union City, Ga.</u>, 918 F.3d 1213 (11th Cir. 2019) (en banc) ("[T]he plaintiff has the opportunity to demonstrate that the defendant's articulated

reason for the adverse employment action is a mere pretext for

discrimination." (citing McDonnell Douglas, 411 U.S. at 804)). A plaintiff may

satisfy this burden "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence."

Burdine, 450 U.S. at 256. "Despite these shifts in the burden of production,

the ultimate burden of persuasion remains on the plaintiff to show that the

defendant intentionally discriminated against [him]." Alvarez, 610 F.3d at

1264.

Pretext means that the reasons given by the employer were not the real

reasons for the adverse employment decision. Hurlbert v. St. Mary's Health

Care Sys., Inc. 439 F.3d 1286, 1298 (11th Cir. 2006). A reason cannot be a

"pretext for discrimination unless it is shown both that the reason was false,

and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks,

509 U.S. 502, 515 (1993) (internal quotations omitted) (emphasis in original);

see also Faircloth v. Herkel Invs. Inc., 514 F. App'x 848, 851 (11th Cir. 2013);

Brooks v. Cty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th

Cir. 2006).

The inquiry as to pretext is based upon "the employer's beliefs, and not

the employee's own perceptions of his performance." Holifield, 115 F.3d at

1565. The Eleventh Circuit has observed that the inquiry does not center "on

- 8 -

reality as it exists outside the of the decision maker's head." <u>Alvarez</u>, 610
F.3d at 1266. So long as the employer's "reason is one that might motivate a
reasonable employer, [the] employee must meet that reason head on and
rebut it, and the employee cannot succeed by simply quarreling with the
wisdom of that reason." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th
Cir. 2000). To establish pretext, the plaintiff must identify "'weaknesses,
implausibilities, inconsistencies, incoherencies or contradictions in [the
employer's] proffered legitimate reasons for its actions that a reasonable
factfinder could find them unworthy of credence.'" <u>Springer v. Convergys
Customer Mgmt. Grp. Inc.</u>, 509 F.3d 1344, 1348–49 (11th Cir. 2007) (quoting
<u>Cooper v. Southern Co.</u>, 390 F.3d 695, 725 (11th Cir.2004)). However, an
"'employer may [take action against] an employee for a good reason, a bad
reason, a reason based on erroneous facts, or for no reason at all, as long as
its action is not for a discriminatory reason.'" <u>Walton v. Cives Corp.</u>, 491 F.
App'x 29, 32 (11th Cir. 2012) (quoting <u>Nix v. WLCY Radio/Rahall Commc'ns</u>,
738 F.2d 1181, 1187 (11th Cir. 1984)).

The Court does not sit as a "super-personnel department," and will not
second guess the business judgment of the employer. <u>Chapman</u>, 229 F.3d at
1030 (internal quotations omitted).  Moreover, the Court is "not in the
business of adjudging whether employment decisions are prudent or fair.
Instead [the Court's] sole concern is whether unlawful discriminatory animus

motivates a challenged employment decision.'" Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (quoting Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999)).

### a. *Plaintiff establishes a prima facie case for discrimination*

As a threshold matter, Plaintiff alleged in his Second Amended Complaint and his response to the instant motion four incidents of discrimination to support an argument showing circumstantial evidence of discrimination. (See Docs. 46.1 at 3–4; 9 at ¶¶ 18, 29). Defendant argues that the incidents in 2015 and 2018 are outside the scope of this lawsuit. (See Doc. 47 at 5).

"The filing of a charge of discrimination with the EEOC within the time limits prescribed by 42 U.S.C. § 2000e-5(e) is a prerequisite to the maintenance of a Title VII action." Gonzalez v. Firestone Tire & Rubber Co., 610 F.2d 241, 249 (5th Cir. 1980).[3] "A past act of discrimination for which a party did not file a charge of discrimination with the EEOC within the limitations period is legally equivalent to a discriminatory act that occurred before the enactment of Title VII." Id. "Although such past discriminatory act may continue to effect an employee's present pay and fringe benefits, such an

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

effect does not constitute a continuing violation of Title VII." Id. "[T]he critical question" in a Title VII case "is whether any present violation exists." United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

"Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice." Gonzalez, 610 F.2d at 249. However,

> where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e-5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

Id.[4]

"The term 'continuing violation' has been used as a blanket to cover at least two different situations, each with its own peculiar set of consequences." Morris v. Wallace Cmty. College-Selma, 125 F. Supp. 2d 1315, 1324 (S.D. Ala. 2001). In one situation, the "continuing violation theory" covers "a single

---

[4] The language and principles governing the 180-day window also apply to the 300-day window that is applicable in this case. See 42 U.S.C. § 2000e-5(e)(1). By statute, the longer window was triggered because Plaintiff "initially instituted proceedings with [the EEOC office in Miami]", which has the "authority to grant or seek relief from [a charge of discrimination.]" Id.

violation that is continually or continuously manifested." Id. (citing Knight v. Columbus, Ga., 19 F.3d 579, 582 (11th Cir. 1994)). In the second situation, a "continuing violation" is "a succession of similar but separate violations." Id. In the second situation, "there is no true continuing violation but rather a series of discrete violations. Because each violation is separate, the charge is timely with respect to those violations that occurred within 180 days of the charge being filed but is untimely with respect to similar violations that occurred previously." Id.; see also Knight, 19 F.3d at 582 ("Because each violation gives rise to a new cause of action, each [violation of Title VII] begins a new statute of limitations period as to that particular event."). The Eleventh Circuit "distinguishes between the present consequence of a one time violation, which does not extend the limitations period, and the continuation of that violation into the present, which does." Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 448 (11th Cir. 1993) (internal quotation omitted).

Here, in Plaintiff's EEOC complaint, Plaintiff claimed that, in addition to the two denials in 2019 in his Second Amended Complaint, in 2018 Defendant failed to allow Plaintiff the opportunity to interview for a principal

position that Dusty Sims vacated;[5] in 2018, Defendant hired a white woman to be the "Assistant Principal . . . [at] MHS" over Plaintiff;[6] that in 2018, a white man was hired as "Buddy Taylor Middle School Principal" over Plaintiff;[7] that in 2017, Plaintiff's interviews as principal of both Wadsworth Elementary School and Matanzas High School were sabotaged; that in 2015, a white woman was hired as principal of Rymfire Elementary School over Plaintiff; and that in 2015, a white man and a white woman were hired over Plaintiff for two additional positions. (Doc. 44 at 42–48).

Of the offenses claimed by Plaintiff, only the June and November 2019 incidents are reviewable in this Court. See Knight, 19 F.3d at 582; see also 42 U.S.C. § 2000e-5(e)(1) (stating a charge is timely filed if the charge is against a "State or local agency" and the charge is filed "within three hundred days after the alleged unlawful employment practice occurred"). Plaintiff filed an EEOC complaint on January 9, 2020. (Doc. 44 at 32). The June and November 2019 offenses were the only offenses within the 300-day time

---

[5] This Court is unable to determine whether the vacancy Dusty Sims' departure created was in the subject school district because the EEOC complaint is devoid of specific facts that would help this Court determine the specific incident. (See Doc. 44 at 44).

[6] This Court believes Plaintiff is referring to Matanzas High School. (See Doc. 46.1 at ¶ 10).

[7] There is an additional claim in Plaintiff's EEOC complaint, but the language is covered by two sticky notes with irrelevant information. (See Doc. 44 at 46).

constraints provided by statute. See 42 U.S.C. § 2000e-5(e)(1); (see also Doc. 44 at 35).

Plaintiff's claims fall under the second "continuing violation" situation, as each claimed offense before 2019 is a discrete incident where he was not hired to be principal of a school within Defendant's school system. See Morris, 125 F. Supp. 2d at 1324–25. Plaintiff not being chosen as principal in the offenses is a consequence of a "one time violation," and as such, the applicable offense window cannot be extended. See Calloway, 986 F.2d at 448. The offenses claimed by Plaintiff are akin to the offenses described in Knight in that the offenses before 2019 appear to be "a series of repeated violations of an identical nature." Knight, 19 F.3d at 582. Each alleged failure to hire violation gave "rise to a new cause of action," which began "a new statute of limitations" separate and distinct from each other. Id. Therefore, as the EEOC complaint was filed on January 9, 2020, only the June and November 2019 failure to hire incidents are relevant for this lawsuit.

Now, turning to whether Plaintiff presented a prima facie case of discrimination, this Court finds Plaintiff met his burden. Plaintiff and Defendant agree that Plaintiff is a member of a protected class, that he was qualified to be a principal in Defendant's school district, and that he was not hired as principal. (See Docs. 44 at 11, 46 at 2). These three elements satisfy three of the four elements required in the McDonnell Douglas burden-shifting

- 14 -

framework. See Walker, 286 F.3d at 1275. At issue is whether Plaintiff discharged his full burden to establish "that the defendant filled the position with a person outside of the protected class." See id.

Defendant argues it has hired seven other members of Plaintiff's protected class in various administrative or leadership positions. (See Doc. 44 at 12). Defendant further argues this Court should look at its hiring choices as a whole and not only at the 2019 hiring incidents. See id.

To support its argument, Defendant directs this court to the decision in Kennebrew v. Cobb Cnty. Sch. Dist., Case No.: 1:15-cv-02495-RWS-CMS, 2017 WL 4334244 (N.D. Ga. May 22, 2017), report and recommendation adopted, No. 1:15-cv-2495-RWS, 2017 WL 4456889 (N.D. Ga. June 28, 2017). There, five special education positions were open, and the plaintiff, a Black man, was not selected for employment. Kennebrew, 2017 WL 4334244, at *1. Plaintiff sued the school district complaining of race, gender, and age discrimination. Id. Specific to the race discrimination claim, the defendant school district argued that the court had to evaluate the full application process, showing that of the five positions, three Black women were selected, and two white women were selected for employment. See id. at *8–*9. While the court found the defendant school district's legal argument persuasive, it did not rely solely on the full hiring process when granting the defendant school board's motion for summary judgment. See id. at *8–*12.

Even if this court was also persuaded by the argument the defendant school board raised in <u>Kennebrew</u>, it would be inappropriate to apply the reasoning to this case. Here, Defendant does not explain when the seven other hires were made and whether they were hired under the same process Plaintiff applied under in 2019. (<u>See</u> Doc. 44 at 12); (<u>see also</u> Doc. 46.1 at 4) (explaining that Defendant has a "new recent panel interview candidate selection process"). The difference between <u>Kennebrew</u> and this case is that the five positions were part of the same hiring process. Focusing solely on the 2019 hiring decisions, Plaintiff has made a <u>prima facie</u> showing to create a presumption under the <u>McDonnell Douglas</u> framework because the eventual hires, Mr. Russell and Ms. DeFord, were not members of Plaintiff's protected class. <u>See</u> <u>Walker</u>, 286 F.3d at 1275.

### b. *Defendant offers a legitimate non-discriminatory reason for not hiring Plaintiff*

As the burden now shifts to Defendant, it offers that it hired Mr. Russell because he was "the best qualified candidate" and Ms. DeFord because in November, there was "an unanticipated mid-school year vacancy" and that she was chosen because she was already working at Belle Terre Elementary School as the assistant principal. (Doc. 44 at 6–7). This Court finds Defendant's explanations are legitimate, non-discriminatory reasons to hire each Mr. Russell and Ms. DeFord and will explain each.

First, Mr. Russell. While it is insufficient to "merely state that [an] employment decision was based on the hiring of the 'best qualified applicant," a defendant school board may "articulate specific reasons for" hiring the eventual candidate over the plaintiff. Steger v. Gen Elec. Co., 318 F.3d 1066, 1076 (11th Cir. 2003). Here, Defendant offers Mr. Russell's resume. (Doc. 44 at 73). Comparing Mr. Russell and Plaintiff's resumes (Docs. 44 at 73, 46.1), both Mr. Russell and Plaintiff have similar educational backgrounds. However, where they differ, and what Defendant based its hiring decision on, was that Mr. Russell had seven years experience as a principal, compared to Plaintiff's zero years, and that Mr. Russell's most recent employment was as the Superintendent of Volusia County Schools for four years. (See Doc. 44 at 6, 73). Plaintiff had no comparable experience at the time. This Court finds Defendant provided a non-discriminatory explanation as to the June 2019 hiring decision. See Steger, 318 F.3d at 1076; see also Increase Minority Participation by Affirmative Change Today of Nw. Fla., Inc. (IMPACT) v. Firestone, 893 F.2d 1189, 1194 (11th Cir. 1990) ("Qualifications for selection of an employee can depend upon seniority, length of service in the same position, personal characteristics, general education, technical training, experience in comparable work or any combination of them.").

Next, Ms. DeFord. Defendant explains that it appointed Ms. DeFord as the interim principal because she was already an employee, the assistant

- 17 -

principal, at Belle Terre Elementary School. Id. Additionally, she was
appointed as the interim principal for "the advantages of continuity and
familiarity between Ms. DeFord and the school, staff, and students." Id. This
explanation is a sufficient, non-discriminatory reason to promote Ms. DeFord
over Plaintiff. See Steger, 318 F.3d at 1076; IMPACT, 893 F.2d at 1193–94.
As Defendant has met its burden of production, the burden now shifts back to
Plaintiff to show Defendant's explanations are mere pretext for unlawful
discrimination. See Burdine, 450 U.S. at 256; Holifield, 115 F.3d at 1565.

      c. *Plaintiff fails to show Defendant's explanations are mere*
                  *pretext for unlawful discrimination*

      Plaintiff offers no evidence to rebut Defendant's explanations as to why
either Mr. Russell or Ms. DeFord were hired. (See generally Doc. 46).
Plaintiff does not even address Defendant's decision to hire Mr. Russell. See
id. Plaintiff only offers one line, that Defendant makes "vague references to
not interviewing well" and that "Plaintiff was a better qualified candidate" to
support that Defendant's explanation is a mere pretext for unlawful
discrimination. Id. at 4. Plaintiff's assertions are not enough to for a
reasonable jury to conclude that Defendant's explanation is mere pretext. See
Hurlbert, 439 F.3d at 1298; Hicks, 509 U.S. at 515; Mize, 93 F.3d at 742;
Hairston, 9 F.3d at 919.

As to Mr. Russell, as this Court noted, Defendant provided Mr. Russell's resume and explained why Mr. Russell's qualifications were more preferable for the principal position with Flagler Palm Coast High School. Plaintiff provides no rebuttal evidence for this Court to consider Defendant's explanation is mere pretext. This Court finds Plaintiff fails to satisfy his burden as to the June 2019 hiring incident. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

As to Ms. DeFord, there was no interview process for the position at Belle Terre Elementary School, so Plaintiff's assertions and evidence about Plaintiff's interviewing abilities are not relevant to the November 2019 incident. Plaintiff also provides no evidence to support he was "next in succession for any interim promotion consideration" and therefore should have been selected over Ms. DeFord. (Doc. 46.1 at ¶ 12). Instead, Defendant offers its neutral written policy and outlines its hiring process for this Court to determine there was no process by which Plaintiff was discriminated against in the decision to make Ms. DeFord the interim principal of Belle Terre Elementary School, and that there was no "next-in-line" policy by which to promote Plaintiff. (See Docs. 44 at 7, 26, 30; 47 at 3–5).

Given that Plaintiff failed to offer evidence to show that a reasonable jury could find that Defendant's explanation regarding Ms. DeFord's placement was mere pretext for discrimination, this Court must grant summary judgment for Defendant. <u>See</u> Fed. R. Civ. P. 56(a); <u>Chapman</u>, 229 F.3d at 1030; <u>Springer.</u>, 509 F.3d at 1348–49; <u>Rojas</u>, 285 F.3d at 1342; <u>Mize</u>, 93 F.3d at 742; <u>Hairston</u>, 9 F.3d at 919.

Accordingly, after due consideration, it is

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. 44) is **GRANTED**. The Clerk of Court shall enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Jacksonville, Florida this ____ day of December, 2022.

BRIAN J. DAVIS
United States District Judge

8
Copies furnished to:

Counsel of Record